### ENT FEDERAL CREDIT UNION,
### Plaintiff–Appellee,

v.

### CHRYSLER FIRST FINANCIAL SERVICES CORPORATION,
### Defendant–Appellant.

### No. 90CA2019.

Colorado Court of Appeals,
Div. II.

Jan. 16, 1992.

Eastland & Welch, Henry B. Eastland, Colorado Springs, for plaintiff-appellee.

Farrell, Goldstein & Seldin, Thomas F. Farrell, Englewood, for defendant-appellant.

Opinion by Judge ROTHENBERG.

Defendant, Chrysler First Financial Services Corporation (Chrysler), appeals the summary judgment entered in favor of plaintiff, ENT Federal Credit Union (ENT). We affirm.

In July 1985, ENT loaned Alice M. Ripley money to buy a mobile home, and Ripley executed a promissory note in favor of ENT. ENT also obtained a purchase money security interest in the mobile home by placing a first lien on the certificate of title. Thereafter, the loan was renewed and extended on two occasions, and the lien was noted on the certificate of title each time.

In October 1988, Chrysler loaned money to Ripley to buy vacant land and Ripley executed a promissory note in favor of Chrysler. As security for the note, Ripley gave Chrysler a first deed of trust on the real property. Ripley then moved the mobile home onto the property where it was welded to a foundation, connected to the utilities, and its wheels and axles were removed. Additionally, a driveway and patio were built around the Ripley home.

Thereafter, Ripley defaulted on both loans. Chrysler then foreclosed on the property, and on November 1, 1989, it received a certificate of purchase.

ENT then filed this action against Ripley for breach of the note and against Chrysler for replevin of the mobile home. ENT also sought a declaratory judgment that its lien was superior to the liens or rights of either Ripley or Chrysler. Chrysler counter-claimed and cross-claimed contending that Ripley had permanently affixed the mobile home to the property and that, therefore, it became incorporated into the property and was no longer a mobile home.

Citing § 4–9–313, C.R.S. (1991 Cum. Supp.), Chrysler further contended that ENT was required to make a fixture filing in order to perfect its lien and had failed to do so. Based on this, Chrysler sought a declaratory judgment that its deed of trust was superior to ENT's lien. Finally, in the event that the court found in ENT's favor, Chrysler sought security from ENT for reimbursement of costs to restore the property to its original condition.

In February 1990, Chrysler received a public trustee's deed to the property. In March 1990, ENT obtained a default judgment against Ripley, and she is no longer a party to this action.

Both parties then filed cross-motions for summary judgment. The court granted ENT's motion after finding, *inter alia*, that the mobile home was a fixture and ENT did not make a fixture filing, but that the Uniform Commercial Code does not require a fixture filing for manufactured homes with certificates of title. The court also found that Chrysler had the ability to protect itself by perfecting the mobile home title when it made the loan, but had failed to do so. The court also found that Chrysler was not damaged in "any legal sense" and denied Chrysler's request for security.

### I.

Chrysler first contends that the trial court erred in granting ENT's motion for summary judgment instead of granting Chrysler's motion. More specifically, Chrysler contends that, because the mobile home had become a fixture, ENT was required to make a fixture filing under the UCC and that, since ENT failed to comply with the UCC's fixture filing requirement, its interest in the mobile home is superior to ENT's interest. We disagree.

The transactions at issue here are governed by the "Titles To Manufactured Homes Act," as enacted in Colo.Sess.Laws 1983, ch. 417, § 38–29–101, et seq., at 1449–1466. *Cf.* § 38–29–101, et seq., C.R.S. (1991 Cum.Supp.) (incorporating 1989 amendments).

Colo.Sess.Laws 1983, ch. 417, § 38–29–102(6) at 1448 defines a manufactured home as "any mobile home." A mobile home is:

*[A]ny wheeled vehicle,* exceeding either eight feet in width or thirty-two feet in length ... without motive power, which is designed and commonly used for occupancy by persons for residential purposes, in either temporary or permanent locations, *and which may be drawn over the public highways by a motor vehicle.* (emphasis added)

Colo.Sess.Laws, ch. 417, § 38–29–125, at 1456 provides:

(1) Except as provided in this section, *the provisions of the Uniform Commercial Code, title 4, C.R.S. 1973, relating to the filing, recording, releasing, renewal, and extension of mortgages, as the term is defined in section 38–29–102(9), shall not be applicable to manufactured homes.* Any mortgage intended by the parties thereto to encumber or create a lien on a manufactured home, to be effective as a valid lien against the rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner, shall be filed for public record and the fact thereof noted on the owner's certificate of title ... and the filing of such mortgage with the authorized agent and the notation by him of that fact on the certificate of title ... shall constitute notice to the world of each and every right of the person secured by such mortgage.

(2) The provisions of this section ... shall not apply to any mortgage or security interest upon any manufactured home

held for sale or lease which constitutes inventory.... (emphasis added)

■ The fixture filing requirement of the Uniform Commercial Code is set forth in § 4–9–313, C.R.S., and establishes the priority rules between a security interest in fixtures (such as that held by ENT) and the interest of an encumbrancer of real estate (such as that held by Chrysler). Under § 4–9–313(4)(a), C.R.S., a perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer of the real estate only if the security interest is perfected by a fixture filing before the goods become fixtures or within ten days thereafter.

However, § 38–29–125(1) excludes manufactured homes from the provisions of the UCC except for those manufactured homes held as inventory. *See* Colo.Sess.Laws 1983, ch. 417, § 38–29–125(2) (a holder of a security interest in a manufactured home held as inventory must perfect its security interest pursuant to § 4–9–101 et seq., C.R.S., of the UCC, and the creditor's rights are governed and determined by that article). Thus, although ENT concededly did not make a fixture filing under § 4–9–313, the trial court correctly ruled that ENT was not required to do so because § 38–29–125(1) excludes manufactured homes from the provisions of the UCC except those held as inventory.

■ Here, ENT properly noted its lien on the certificate of title, which is all that it was required to do in order to create a lien on Ripley's manufactured home. See § 38–29–125(1). *See also* 9 R. Anderson, *Uniform Commercial Code* § 9–302:52 (3d ed. 1985) (when a statute states that the notation of a security interest on the title of certificate for a mobile home is the exclusive method of perfecting a security interest thereon, perfecting under the statute is sufficient and the creditor is not additionally required to perfect his interest under the code; a filing under the code has no effect).

In summary, the trial court correctly concluded that ENT's lien on the mobile home was perfected by its notation on the certificate of title and that, therefore, ENT's interest was superior to Chrysler's mortgage on the property.

As additional support for the trial court's conclusion, we note that Colo.Sess.Laws 1983, ch. 417, § 38–29–118(2) at 1454, which then applied, provided that owners of a manufactured home for which a certificate of title has been issued and which has been permanently affixed to the ground, *may*, after obtaining the consent of any mortgage holder, surrender their certificate of title and request that the manufactured home title be purged. Thus, under that statute, if the mobile home title was purged and certain other conditions were met, the manufactured home could become real property.

Here, however, it is undisputed that Ripley did not surrender her certificate of title or request that the mobile home title be purged pursuant to that statute. *Cf.* § 38–29–112, C.R.S. (1991 Cum.Supp.) (under 1989 amendment owner *must* purge certificate of title once the mobile home is permanently affixed to the ground).

In view of our conclusion that § 4–9–101, et seq., C.R.S., is inapplicable to this case, we also find no error in the trial court's refusal to award Chrysler reimbursement "for the cost of repair of any physical injury ... caused by the absence of the goods removed...." *See* § 4–9–313(8), C.R.S. (1991 Cum.Supp.).

## II.

Summary judgment is proper when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District*, 689 P.2d 594 (Colo.1984). Applying that standard to the circumstances before us, we conclude that summary judgment was proper.

The judgment is affirmed.

TURSI and JONES, JJ., concur.