GREEN TREE FINANCIAL SERVICING CORPORATION, APPELLEE, V. RANDY SUTTON AND RITA SUTTON, APPELLANTS, AND WILL ANDERS AND TONI ANDERS, APPELLEES.

650 N.W.2d 228

Filed August 9, 2002.   No. S-00-1256.

Gregory J. Beal, of Gregory J. Beal & Associates, P.C., for appellants.

Richard A. Drews, of Taylor, Kluver, Peters & Drews, for appellee Green Tree Financial Servicing Corporation.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

In this replevin action, Randy Sutton and Rita Sutton appeal the decision in favor of appellee Green Tree Financial Servicing Corporation, now known as Conseco Finance Servicing Corporation (Green Tree). Green Tree sought possession of a manufactured home situated on real estate purchased by the Suttons. The Suttons were not debtors, but were in possession of the manufactured home at the time the action was commenced. Prior to trial, Green Tree obtained an order allowing it to take possession of the manufactured home. At the time of trial, the

home was already in Green Tree's possession. The trial court directed a verdict in favor of Green Tree for possession of the manufactured home, but denied Green Tree's request for loss-of-use damages. No cross-appeal was taken by Green Tree. The trial court also directed a verdict against the Suttons on their claim for damages to their real property.

## BACKGROUND

On or about March 25, 1997, Steven D. Beck and Lynda J. Beck made, executed, and delivered to Green Tree a manufactured home promissory note, security agreement, and disclosure statement (contract). Pursuant to the contract, the Becks were to make 360 monthly payments to Green Tree for the purchase of a manufactured home. Green Tree was to get a security interest in the home, which is noted on the certificate of title to the home.

The manufactured home was placed by the Becks on real property in Morrill County, which the Becks purchased from John Riggs. That transaction took place in December 1996. The Becks later filed for protection in the U.S. Bankruptcy Court for the District of Nebraska, but Green Tree obtained an order granting it relief from the automatic stay provisions.

On April 28, 1999, Green Tree filed a proof of claim with respect to its secured claim in the amount of $57,504.19. Under the contract for the sale of the manufactured home, the failure to make payments and the filing of bankruptcy were acts of default. This default entitled Green Tree to accelerate the full amount due under the contract and to repossess the home.

Sometime prior to July 16, 1999, the Becks abandoned the subject property. On June 15, 1999, the trustee executed a deed of reconveyance to "the person or persons entitled thereto." That same day, the trustee sold the real estate subject to the deed of trust to Timothy B. Riggs. On July 16, 1999, a warranty deed from Timothy Riggs and Kellye Riggs was given to Camp Clarke Ranch, L.L.C., conveying certain real estate, including the land on which the manufactured home was located. That same day, a warranty deed and attached plat from Camp Clarke Ranch, L.L.C., was given to the Suttons conveying the real estate at issue to the Suttons for $52,200.

At no time prior to the trustee's sale or the filing of the deed of reconveyance did Green Tree file or record a lien or claim of interest in the real estate. The Suttons checked for liens in the real estate records of Morrill County, but did not check the Morrill County clerk's records regarding a certificate of title to the manufactured home, or any liens thereon.

Randy Sutton testified that the value of the real property would have been only $700 per acre without the home. He assumed the home went with the land, and gave $52,200 for the property, which would have otherwise been farm ground. The Suttons claim that they were unaware of Green Tree's interest in the manufactured home until they learned otherwise on or about July 26, 1999.

The Suttons leased the manufactured home to Will Anders and Toni Anders, who occupied it until Green Tree commenced a replevin action. The Anderses moved out of the manufactured home and have no further interest in the proceeding.

Green Tree filed a replevin action to recover possession of the manufactured home. After a temporary possession hearing, the trial court entered an order granting immediate possession of the home to Green Tree. Green Tree posted an undertaking in replevin and a bond in the amount of $120,000. Green Tree hired a transfer company to remove the home and take it to a mobile home park in North Platte, Nebraska.

Under a writ of replevin, Morrill County Sheriff John Edens was ordered to deliver the manufactured home, a 1997 Guerdon Premier, 28- by 58-foot "mobile home," serial No. GDGENE0997158531/II. He oversaw the removal of the home, and met with the transfer company at approximately 9 a.m. on January 13, 2000. He observed the skirting around the manufactured home had been removed and jacks had been placed underneath the home to split the home into trailers. The only foundation observed by Edens was a flat cement surface. The home was sitting on cinder blocks, and attached underneath the trailers were axles and tongues.

Edens did not stay the entire day to observe the removal of the manufactured home, but checked in periodically until the home was removed around 4 p.m. He was not present when the home was actually driven off the property, but arrived soon after

the workers had left. He observed no damage to the trees or the real estate other than tire tracks on the grass where the trucks had driven. However, according to Randy Sutton, water lines were cut, left open, and exposed; septic system pipes were destroyed; a pump was removed from a well; and the real property was left in a state of utter destruction. The Suttons claim thousands of dollars in damages to their property by reason of the removal of the manufactured home.

During the testimony of Edens, the Suttons attempted to offer photographs of the property. Green Tree objected. An order was previously entered requiring all exhibits to be provided by September 13, 2000, unless good cause was shown. The photographs, marked as exhibits 39 to 47 were not produced by September 13, or prior to trial. Green Tree objected to the photographs on the basis that the pretrial order directed all exhibits to be provided by September 13, unless good cause was shown. The first time the attorney for Green Tree had seen any of these photographs was at the trial. The Suttons' attorney responded that the photographs were offered only as impeachment of Edens' testimony, since he testified that he did not see any damage to the real estate. The trial court sustained the objection, stating that Edens "didn't say there wasn't any damage. He said he didn't see any."

At the conclusion of the evidence, Green Tree moved for a directed verdict on all of the issues. The trial court sustained the motion as to whether Green Tree rightfully possessed the property, but denied the motion as to whether Green Tree was entitled to damages and as to whether the Suttons' counterclaim should be dismissed.

Before the jury was instructed, the trial court reconsidered its decision on Green Tree's motion to dismiss. Finding that the claim for damages incident to the removal of the manufactured home was insufficiently pled to be submitted to the jury, the trial court dismissed the Suttons' counterclaim with prejudice.

## ASSIGNMENTS OF ERROR

According to the Suttons, the trial court erred (1) in directing a verdict in favor of Green Tree on the issue of whether it had the right to immediate possession of the manufactured home; (2)

in finding that it was not necessary for Green Tree to make a fixture filing in order to perfect a security interest in the manufactured home and ruling that Green Tree could treat the subject property as a motor vehicle or personal property rather than as property affixed to real estate; (3) in refusing to submit to the jury the issue of whether their real property had been damaged as a result of the removal of the manufactured home from said real property; and (4) in its rulings on evidence, the cumulative effect of which constitutes prejudicial error toward them.

## STANDARD OF REVIEW

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Suburban Air Freight v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001).

In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Fackler v. Genetzky*, 263 Neb. 68, 638 N.W.2d 521 (2002).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001). A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000).

## ANALYSIS

### GREEN TREE'S RIGHT TO POSSESSION

The trial court directed a verdict in favor of Green Tree as to the issue of possession. The trial court necessarily found that

Green Tree had a valid lien on the manufactured home listed on the certificate of title, that it did not need to make a fixture filing in order to perfect its security interest, and that the manufactured home could be treated as a motor vehicle rather than as property affixed to real estate.

Neb. Rev. Stat. § 60-110 (Reissue 1998) provides:

> The provisions of article 9, Uniform Commercial Code, shall never be construed to apply to or to permit or require the deposit, filing, or other record whatsoever of a security agreement, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or similar instrument or any copy of the same covering a motor vehicle. Any mortgage, conveyance intended to operate as a security agreement as provided by article 9, Uniform Commercial Code, trust receipt, conditional sales contract, or other similar instrument covering a motor vehicle . . . if a notation of the same has been made by the county clerk or the Department of Motor Vehicles on the face thereof, shall be valid as against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants but otherwise shall not be valid against them . . . .

At the time that Green Tree filed its petition in replevin, Neb. U.C.C. § 9-302(3)(b) (Cum. Supp. 1996) stated that the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to § 60-110 (now found at Neb. U.C.C. § 9-311(a)(2)(i) (Reissue 2001)). Thus, a lien on a motor vehicle under § 60-110 is valid when noted on the certificate of title, and not through a fixture filing under article 9 of the Uniform Commercial Code.

In *Metropolitan Life Ins. Co. v. Reeves*, 223 Neb. 299, 389 N.W.2d 295 (1986), we stated that the characterization put upon articles as fixtures or nonfixtures by parties to a purchase contract should be upheld where the rights of third parties are not adversely affected, no statute suggests a contrary result, and the articles are not so completely merged with the realty as to prevent removal of the article without material injury to the realty. The original contract between the Becks and Green Tree clearly demonstrate their intent for the manufactured home to remain

personal property and not become a fixture. Paragraph 9 of the contract between the Becks and Green Tree states:

> I agree that regardless of how my Manufactured Home is attached to the real property and regardless of how your security interest in my Manufactured Home is perfected and regardless of whether an affidavit of affixture (or other similar instrument identifying the property as a fixture) has been recorded, my Manufactured Home is and shall remain personal property and is not and shall not become a fixture or part of the real property unless you consent in writing and state law permits a contrary classification. I agree to pay any and all personal property taxes assessed against my Manufactured Home and agree that failure to pay such taxes shall constitute a default under paragraph 14 on page 3.

To the extent the Suttons claim to be innocent third parties adversely affected by the intent of the original parties or that removal of the manufactured home would materially injure the real property upon which it is placed, the plain language of the Nebraska Revised Statutes dictates that Green Tree was entitled to immediate possession of the manufactured home and did not need to file a fixture filing. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002); *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002).

Neb. Rev. Stat. § 60-102 (Reissue 1993) states, "Sections 60-102 to 60-117 shall apply to motor vehicles, commercial trailers, and semitrailers required to be registered under sections 60-301 to 60-306 and **all cabin trailers defined in section 60-614** . . . ." (Emphasis supplied.) Neb. Rev. Stat. § 60-614 (Reissue 1993) defines a cabin trailer as

> a trailer or semitrailer which is designed, constructed, and equipped as a dwelling place, living abode, or sleeping place, whether used for such purposes or instead permanently or temporarily for the advertising, sale, display, or promotion of merchandise or services or for any other commercial purpose . . . . Cabin trailer shall not mean a

trailer or semitrailer which is permanently attached to real estate. There shall be three classes of cabin trailers:

. . . .

(2) Mobile home which shall include cabin trailers more than one hundred two inches in width or more than forty feet in length[.]

The issue is, therefore, whether a "manufactured home" is within the scope of § 60-110 as a "cabin trailer" or "mobile home."

According to the Suttons, none of the statutory definitions setting forth what a motor vehicle is suggest that a manufactured home is a motor vehicle. Therefore, the Suttons claim that Green Tree was required to make a fixture filing. They claim that absent a fixture filing, Riggs, as an innocent purchaser for value without notice, passed title to the manufactured home to the Suttons.

Green Tree, on the other hand, argues that it did all acts necessary under Nebraska law to obtain a perfected security interest in the manufactured home. Green Tree's lien was noted on the face of the certificate of title and was valid against the Suttons. Thus, Green Tree was entitled to immediate possession of the manufactured home.

■ According to Neb. Rev. Stat. § 71-4603(1) (Reissue 1996), a "manufactured home" is defined as

a structure, transportable in one or more sections, which in the traveling mode is eight body feet or more in width or forty body feet or more in length or when erected on site is three hundred twenty or more square feet and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities and includes the plumbing, heating, air conditioning, and electrical systems contained in the structure . . . .

The size of the manufactured home is 28 feet by 58 feet. The home was not attached to real estate when originally purchased. It is designed, constructed, and equipped as a dwelling place, living abode, or sleeping place, and was used as a permanent residence. It is designed to be moved, and is issued or delivered in two parcels or sections. Both Will Anders and Edens reported seeing axles attached to the bottom of the home.

Pursuant to Neb. Rev. Stat. §§ 71-4621(1), 76-1463, and 81-5,138 (Reissue 1996), the term "mobile home" includes "manufactured homes." While these statutes do not involve the certificates of title, they do provide insight as to how Nebraska law views manufactured homes. Nebraska law includes the term "manufactured home" within the definition of "mobile home."

Pursuant to Neb. Rev. Stat. § 60-113 (Reissue 1993), once the manufactured home was affixed to real property, the owner, in order to have the lien on a motor vehicle title canceled, would go to the county clerk's office to have the certificate of title surrendered. However, the lien noted on the certificate of title would still be valid if Green Tree did not consent to its being canceled. There appears to be nothing in the record which demonstrates that the Becks or the Suttons had the certificate of title surrendered or canceled. Thus, Green Tree would still have a valid lien on the manufactured home even if it was determined to be affixed to the Suttons' real property.

Other courts have come to similar decisions regarding the effect of noting a lien for a mobile home or manufactured home on a certificate of title. See, *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 534 S.E.2d 688 (2000) (security interest in mobile home is perfected when such interest is listed on certificate of title to mobile home); *ENT Fed. Cr. Un. v. Chrysler First Fin.*, 826 P.2d 430 (Colo. App. 1992) (noting lien on certificate of title was all that was required to create lien on manufactured home); *Beneficial Finance Co. v. Schroeder*, 12 Kan. App. 2d 150, 737 P.2d 52 (1987), *review denied* 241 Kan. 838, 737 P.2d 52 (bank properly perfected its security interest in mobile home by noting its interest on mobile home's certificate of title, and court noted that, as practical matter, if mobile homes were subject to fixture filing requirements, secured party with interest in mobile home could maintain priority only by making new fixture filing each time mobile home was moved). See, also, *Hiers v. Bank One*, 946 S.W.2d 196 (Ky. App. 1996); *Hughes v. Young*, 115 N.C. App. 325, 444 S.E.2d 248 (1994), *review denied* 337 N.C. 692, 448 S.E.2d 525; *Bank of Commerce v. Waddell*, 731 S.W.2d 61 (Tenn. App. 1986); *T & O Mobile Homes v. United California Bank*, 40 Cal. 3d 441, 709 P.2d 430, 220 Cal. Rptr. 627 (1985) (decided under statutory scheme applicable during relevant transactions).

Based on the above discussion, we conclude that the trial court did not err in granting Green Tree a directed verdict as to whether it had a right to immediate possession of the manufactured home. Green Tree noted its lien on the certificate of title to the manufactured home and did not need to make a fixture filing. It could thus treat the property as personal property rather than a fixture, since the certificate of title has not been surrendered with Green Tree's consent.

## SUTTONS' DAMAGES

The Suttons also argue that the trial court erred in refusing to submit to the jury the issue of whether their real property had been damaged as a result of the removal of the manufactured home. The trial court held that the Suttons failed to sufficiently plead damages to their property caused by the manner of removing the home and that judgment on that issue was to be directed in favor of Green Tree.

We disagree with the trial court and find that the Suttons sufficiently pled damages to their real property caused by the manner in which the manufactured home was removed. On February 8, 2000, the Suttons filed an amended answer and counterclaim and claimed, inter alia, the following damages:

4. That the Defendants would be damaged in an amount in excess of $10,000.00, in any event, should the Court order that the Plaintiff in this case should be allowed to remove the residence from the property, and that the Plaintiff in any such case, should be ordered to pay the Defendants damages and restore the property to the same condition as it was prior to the construction of this house on the subject real estate, including replacement of trees and restoration of the landscape.

That if Plaintiff has removed the residence from Defendant's real estate prior to trial, Plaintiff should be adjudged liable for replacement value of the residence plus any and all costs necessary to re-erect, construct or otherwise restore Defendant's property to substantially the same condition it was in before wrongful removal; that Defendant's [sic] should further be awarded damages for lost rental income and/or other revenues which Defendants

otherwise would have received from the property removed, the beneficial use and enjoyment thereof.

5. That Defendants should be awarded any consequences damages sustained by Defendants resulting from Plaintiff's seizure and removal of the residence.

Although a pleading should not leave uncertainty as to the theory of recovery on which the pleader wishes to proceed, we have held that in actions not involving extraordinary remedies, general pleadings are to be liberally construed in favor of the pleader. *Becker v. Hobbs*, 256 Neb. 432, 590 N.W.2d 360 (1999).

Liberally construed, in light of the damages requested in paragraph 4, and when read in conjunction with paragraph 5, we conclude that the request in paragraph 5 for "consequences damages . . . resulting from Plaintiff's seizure and removal of the residence" did contemplate consequential damages. This paragraph was sufficient to notify Green Tree that the Suttons were requesting damages arising from the manner in which the manufactured home was removed from the real property.

Because we have found that the Suttons adequately pled damages to their real estate caused by the manner in which the manufactured home was removed, we find it unnecessary to address whether the trial court erred in failing to grant the Suttons leave to amend their pleading to conform to the evidence of the case.

We accordingly reverse the trial court's decision directing a verdict in favor of Green Tree on this issue, and we remand the cause to the trial court for a new trial on the issue of damages.

RULINGS ON EVIDENCE

The Suttons argue that the trial court erred in excluding exhibits 39 to 47, which allegedly included photographs of the Suttons' real estate after the manufactured home was removed. The basis for the objection ruling was that the photographs were not produced in compliance with the pretrial order. This assigned error is not likely to occur in the new trial, and we decline to address the assignment of error.

CONCLUSION

For the aforementioned reasons, we find that the trial court did not err in granting a directed verdict in favor of Green Tree as to whether it had the right to immediate possession of the

manufactured home and as to whether a fixture filing was necessary for Green Tree to perfect a security interest in the manufactured home. However, we find that the trial court did err in directing a verdict in favor of Green Tree on the issue of the Suttons' damages.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.