DOUGLAS A. KINNEY, APPELLEE AND CROSS-APPELLANT, V.
H.P. SMITH FORD, L.L.C., APPELLANT AND CROSS-APPELLEE.

667 N.W.2d 529

Filed August 8, 2003.   No. S-02-689.

Joseph E. Jones and Heidi L. Evatt, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., and Jerome T. Wolf and David S. Ladwig, of Sonnenschein, Nath & Rosenthal, for appellant.

Gregory C. Scaglione, of Koley Jessen, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.
## NATURE OF CASE
Douglas A. Kinney, who served as the managing partner of H.P. Smith Ford, L.L.C. (H.P. Smith), for approximately 18 months, brought this action against H.P. Smith after his employment was terminated. In his petition, Kinney alleged that H.P. Smith owed him unpaid wages, including bonuses, and the value of his 10-percent ownership in the dealership. He also requested replevin of personal items. H.P. Smith filed a counterclaim, alleging that Kinney had breached his fiduciary duty during the time he managed the dealership. The jury returned verdicts in favor of Kinney on the claims asserted in his petition and found against H.P. Smith on its counterclaim.

## FACTS
From 1983 to 1994, Kinney worked at various automobile dealerships in the capacity of controller or head of the accounting department. Prior to 1997, he worked for Wolfe Automotive Group (WAG) in Kansas City, Missouri, as the controller, internal auditor, and chief financial officer. While Kinney worked for WAG in Kansas City, he was paid a salary of $8,500 per month plus a bonus equal to 1 percent of the net profits of the 13 dealerships owned by WAG.

In 1997, Kinney was given the opportunity to purchase a 10-percent equity interest in H.P. Smith, located in Omaha, Nebraska. Kinney, Jeffrey Wolfe, Cynthia Tucci, and David Gatchell then entered into an operating agreement which governed the operations of H.P. Smith and the relationship between the owners. Kinney made an initial investment of $10,000 which constituted the opening balance of his capital account. Effective July 1, Kinney became the managing partner of H.P. Smith and received a salary of $10,000 per month plus a bonus equal to 10 percent of H.P. Smith's net profits. He also received a relocation bonus of $40,000.

In early 1998, Robert Priest, Jr., WAG's chief financial officer, prepared an accounting of bonuses due Kinney for his 1997 employment with WAG and H.P. Smith. The accounting indicated a bonus of $56,500 for work in Omaha and a bonus of $19,455 for "Pre-Omaha" employment. Kinney subsequently prepared his

own reconciliation because he disagreed with Priest's calculations. Kinney's calculations indicated an Omaha bonus of $68,478 and a bonus for pre-Omaha employment of $41,797.56.

Throughout 1998, Kinney continued receiving a monthly salary of $10,000 plus benefits and a 10-percent bonus on H.P. Smith's net profits. He was also offered certain bonuses as a performance incentive plan. H.P. Smith subsequently prepared an accounting of Kinney's 1998 bonuses which showed that he had earned a bonus of $90,064. Subtracting advances Kinney had received, H.P. Smith's calculations reflected that Kinney owed the dealership $2,980. Kinney disputed these figures and prepared his own reconciliation, which indicated that he had earned a bonus of $142,712, of which he had received only $19,804.83. Kinney claimed he was owed $122,907.17 for 1998. His employment was terminated on January 20, 1999.

On March 2, 1999, Kinney commenced this action against H.P. Smith for replevin; unpaid wages, including bonuses, under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1998); and breach of contract for failure to pay him the balance of his capital account. In its answer, H.P. Smith denied liability and filed a counterclaim asserting that Kinney had breached his fiduciary duty and that as a result, H.P. Smith had been damaged.

At trial, Kinney testified as to the increase of his capital account since his initial capital investment. He stated that following his termination of employment, H.P. Smith transferred his 10-percent ownership interest to Tom Fitzgerald and Larry Villines without paying him for his interest. Kinney alleged that as of December 31, 1998, the balance of his capital account was $126,150.60.

The jury returned verdicts in favor of Kinney in the following amounts: $132,500 on his claim for unpaid wages; $116,645 on his claim for the value of his capital account; and $560 for his replevin action. The jury found against H.P. Smith on the counterclaim for breach of fiduciary duty.

The trial court entered judgment in favor of Kinney in the amount of $249,705 plus prejudgment interest in the amount of $32,037.78. The court also awarded attorney fees of $40,000 and costs of $4,081.28 pursuant to § 48-1231. Pursuant to § 48-1232,

the court ordered H.P. Smith to pay $1,000 into a fund to be distributed to the common schools of the State of Nebraska.

H.P. Smith filed a motion for judgment notwithstanding the verdict or, in the alternative, for new trial. The motion was denied, and H.P. Smith appeals.

## ASSIGNMENTS OF ERROR

H.P. Smith assigns as error that the trial court erred in (1) submitting Kinney's unpaid bonus and breach of contract claims to the jury because Kinney failed to offer any testimony that his damages were calculated in compliance with (a) generally accepted accounting principles (GAAP), as required by the operating agreement, and (b) the strict terms of the operating agreement governing the calculation of capital account balances; (2) overruling H.P. Smith's objection to Kinney's testimony concerning his alleged damages because he failed to lay a foundation qualifying himself as an expert on GAAP; (3) overruling H.P. Smith's objection that Kinney failed to lay an adequate foundation for his damages testimony and exhibits because expert testimony on GAAP was required; and (4) submitting Kinney's unpaid bonus and breach of contract claims to the jury because it permitted the jury to award damages to him based on speculation and conjecture, to H.P. Smith's prejudice.

On cross-appeal, Kinney claims that the trial court erred when it ordered H.P. Smith to pay $1,000 into a fund for the common schools of the state pursuant to § 48-1232. Kinney asserts that the court should have assessed an amount equal to the judgment on his claim for unpaid wages or double that amount.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Green Tree Fin. Servicing v. Sutton*, 264 Neb. 533, 650 N.W.2d 228 (2002).

## ANALYSIS

H.P. Smith argues that the trial court should not have submitted Kinney's claims concerning an unpaid bonus and the amount in his capital account to the jury because he failed to show that

his damages were calculated in compliance with GAAP and that the capital account balance was calculated in compliance with the terms of the operating agreement. H.P. Smith asserts that Kinney was not qualified to testify as to the calculation of the bonuses due him because he failed to lay a foundation qualifying himself as an expert on GAAP and that he failed to lay adequate foundation for his damages because expert testimony on GAAP was required. In its brief, H.P. Smith defines GAAP as including " 'broad statements of accounting principles amounting to aspirational norms as well as more specific guidelines and illustrations,' " quoting *Bily v. Arthur Young and Co.*, 3 Cal. 4th 370, 834 P.2d 745, 11 Cal. Rptr. 2d 51 (1992). See brief for appellant at 20. It argues that the failure to provide qualified expert testimony regarding Kinney's damages was prejudicial error.

At trial, H.P. Smith objected to certain exhibits offered by Kinney based on a lack of foundation and claimed that the exhibits specifically required expert testimony. The trial court overruled the objection based upon *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997), which dealt with demonstrative evidence. Kinney then continued to testify regarding his computation of his bonus income for 1998 and the calculation of his 1998 yearend capital account balance.

H.P. Smith argues that the trial court failed to determine whether a proper foundation was laid for Kinney's opinion testimony concerning his damages and therefore erred in admitting the evidence. It also argues that Kinney failed to testify how his calculations complied with or were derived from GAAP. H.P. Smith therefore asserts that Kinney failed to supply the requisite expert testimony for the figures underlying his calculations and that, as a result, the court erred in submitting such evidence to the jury.

We first address whether the trial court erred in admitting evidence relating to Kinney's claims regarding his bonus and capital account. The objections made by H.P. Smith relate to the admissibility of demonstrative exhibits offered by Kinney during the course of his testimony.

It was incumbent upon H.P. Smith to make a specific objection to the evidence offered by Kinney. It is obvious from the record that the trial court did not consider the objections to the

evidence that H.P. Smith now argues on appeal. The trial court was not advised that H.P. Smith objected to certain evidence because it did not conform to GAAP or did not comply with the requirements of the operating agreement. The objections in the record relate specifically to the offer of exhibits which the court considered to be demonstrative evidence. There were no objections to Kinney's testimony except general objections to foundation, e.g., "calls for expert testimony."

A general foundational objection fails to provide adequate specificity to object to the qualifications of an expert witness, and thus, such general objection is insufficient to challenge the expert's qualifications. See *Bernadt v. Suburban Air, Inc.*, 221 Neb. 537, 378 N.W.2d 852 (1985). Without a more specific objection, neither the court nor the proponent of the evidence can properly address the reason for the party's objection to the admission of such evidence.

The record does not establish that H.P. Smith objected to the evidence on the basis that Kinney had not shown that such evidence was prepared in accordance with GAAP. H.P. Smith failed to specifically identify in its objection how the evidence lacked foundation or that Kinney was not competent to testify as to the amount of the damages he claimed were owed to him. The record showed that Kinney had been the controller, internal auditor, and chief financial officer of WAG. The objection was not specific enough to permit Kinney to counter the objection with additional evidence regarding foundation or expertise.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Green Tree Fin. Servicing v. Sutton*, 264 Neb. 533, 650 N.W.2d 228 (2002). We conclude that the trial court did not abuse its discretion in overruling H.P. Smith's objections to the evidence offered by Kinney.

We next address whether the trial court erred in submitting Kinney's unpaid bonus and capital account claims to the jury. At the close of Kinney's case, H.P. Smith asked the trial court to direct a verdict on the capital account, arguing that the plain language of the operating agreement stated that H.P. Smith had "the right, but not the obligation, to repurchase" Kinney's interest "for

a purchase price equal to the positive balance" of the capital account when his employment was terminated. The motion for directed verdict was overruled by the court.

H.P. Smith then presented evidence and, at the close of its case, renewed its motion as to the language of the operating agreement. It also moved for a directed verdict on Kinney's claim for 1997 wages because he had reviewed the calculations made by H.P. Smith and had not raised any issues at that time. As another basis for its motion for directed verdict, H.P. Smith asserted that there was no credible evidence of damages because Kinney's evidence was based on a financial statement that was erroneous in that he had offered no expert testimony to support his damage claim. This motion was also overruled. H.P. Smith again renewed its motion after Kinney had presented his case in rebuttal.

▮ A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Walls v. Shreck*, 265 Neb. 683, 658 N.W.2d 686 (2003). By proceeding with trial and introducing evidence, H.P. Smith waived any error in the trial court's initial ruling on the motion for directed verdict made at the close of Kinney's case. See *Bradley T. & Donna T. v. Central Catholic High Sch.*, 264 Neb. 951, 653 N.W.2d 813 (2002).

▮ We next consider whether the trial court erred in overruling the motion for directed verdict at the close of H.P. Smith's case and after Kinney had presented his rebuttal evidence. "A renewed motion for directed verdict need not restate with precision every basis asserted in the initial motion for directed verdict. The two should be considered together." *Id.* at 959, 653 N.W.2d at 819. A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *Billingsley v. BFM Liquor Mgmt.*, 264 Neb. 56, 645 N.W.2d 791 (2002).

▮ It is the duty of the trial court to refrain from submitting to the jury the issue of damages where the evidence is such that it cannot determine that issue without indulging in speculation and conjecture. *Gagne v. Severa*, 259 Neb. 884, 612 N.W.2d 500 (2000). At trial, Kinney testified that in preparing his bonus reconciliation, he analyzed H.P. Smith's 1998 financial statements

and calculated what he believed was the dealership's net profit. He testified without objection that he used this information to calculate his 1998 bonus. Kinney also testified without objection that H.P. Smith's net income in 1998 was about $1.4 million. Additional testimony was offered by a former new car and truck manager of H.P. Smith, who testified that based on management meetings in which he participated and upon a review of H.P. Smith's business records, he believed that the bonus pool upon which Kinney's percentage of wages was based was about $1.5 million. There was no objection to this testimony.

We conclude that there was sufficient evidence to submit Kinney's bonus claim to the jury. The record shows that the jury had sufficient evidence upon which to make its determination as to the bonus due Kinney. Evidence was properly admitted upon which reasonable minds could draw different conclusions as to the bonuses owed to Kinney and the amount of the capital account. The trial court did not err in submitting Kinney's claims to the jury, as the damages were not based on speculation or conjecture.

With regard to Kinney's capital account, the operating agreement provided that an owner's capital account was to be increased or decreased based on income, gains, losses, and deductions of H.P. Smith. Upon termination of Kinney's employment, H.P. Smith had the right, but not the obligation, to repurchase Kinney's interest in the amount of the positive balance of the capital account as of the termination date.

At trial, Kinney testified that his capital account had increased since his initial capital investment. Kinney testified that as of December 31, 1998, his capital account balance was $126,150.60. Kinney testified that after his employment was terminated, H.P. Smith transferred his capital account to Fitzgerald and Villines without paying him. We conclude that when H.P. Smith transferred this capital account, it exercised its right to repurchase Kinney's ownership interest. There was sufficient competent evidence to submit this issue to the jury.

H.P. Smith's assignments of error are without merit, and we therefore affirm the judgment of the trial court.

We next address Kinney's cross-appeal that the trial court erred when it ordered H.P. Smith to pay $1,000 into a fund to be

distributed to the common schools of the state in accordance with § 48-1232. Kinney asserts that the amount assessed should have been equal to the judgment on his claim for unpaid wages ($132,500), or double that amount.

Section 48-1232 provides:

> If an employee establishes a claim and secures judgment on such claim under section 48-1231: (1) An amount equal to the judgment may be recovered from the employer; or (2) if the nonpayment of wages is found to be willful, an amount equal to two times the amount of unpaid wages shall be recovered from the employer. Any amount recovered pursuant to subdivision (1) or (2) of this section shall be placed in a fund to be distributed to the common schools of this state.

The trial court found that there was not a reasonable dispute as to Kinney's wage claim. However, in view of the fact that it had awarded more than 25 percent of the judgment in attorney fees, the court declined to award more than $1,000 payable to a fund to be distributed to the common schools of the state.

Kinney argues that the trial court correctly exercised its discretion in imposing a penalty, but that once it exercised such discretion, it was required to impose the penalty in an amount equal to the judgment for unpaid wages ($132,500), or double that amount. The question for this court is: If a court exercises its discretion to order an employer to make payment to a fund to be distributed to the common schools of the state, must the court order payment of an amount equal to the judgment for the wage claim, or double that amount, as set forth in § 48-1232?

In *Suess v. Lee Sapp Leasing*, 229 Neb. 755, 428 N.W.2d 899 (1988), we stated that under § 48-1232, it is in the court's discretion whether to order the employer to pay to the common school fund an amount equal to the judgment. We stated that since this provision was in the nature of a penalty, discretion should be exercised only in those cases in which there is no reasonable dispute as to whether wages are owed or as to the amount of the wages. At that time, § 48-1232 stated: " '[A]n amount equal to the judgment shall be recovered from the employer, if ordered by the court . . . .' " *Suess*, 229 Neb. at 768, 428 N.W.2d at 907.

In the case at bar, since the trial court found that there was not a reasonable dispute as to the wage claim, the court properly exercised its discretion to order the penalty. The next question is whether the court was required to order a penalty in the full amount of the judgment or whether it had discretion to order payment of only $1,000, as it did.

Statutory interpretation presents a question of law. *Wolfe v. Becton Dickinson & Co., ante* p. 53, 662 N.W.2d 599 (2003). Subsequent to *Suess*, the Legislature amended § 48-1232 by replacing the word "shall" with the word "may." Section 48-1232 now provides: "If an employee establishes a claim and secures judgment on such claim under section 48-1231: (1) An amount equal to the judgment *may* be recovered from the employer . . . ." (Emphasis supplied.) This amendment evidences a legislative intent to allow the courts to exercise discretion in determining the amount that may be awarded under § 48-1232.

The amount of penalty ordered to be paid to a fund to be distributed to the common schools of the state is a matter left to the discretion of the trial court. Given that the court has discretion whether to order the penalty, it must also have discretion to determine the amount. Section 48-1232 limits the discretionary amount that may be ordered. If we were to interpret § 48-1232 as requiring the trial court to order an all-or-nothing penalty, this would have a chilling effect on the exercise of such discretion in the first instance. We therefore conclude that trial courts have discretion to order such penalties and that having exercised such discretion, the court also has the discretion to determine the amount of the penalty, subject to the limitations prescribed by statute. We therefore deny Kinney's cross-appeal.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court is affirmed. As prescribed by § 48-1231, we tax as costs in this court an attorney fee equal to 25 percent of the judgment on Kinney's claim for unpaid wages, which costs shall be paid by H.P. Smith.

AFFIRMED.