Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2024 09:10 AM CST

- 64 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

132 VENTURES, LLC, A NEBRASKA LIMITED LIABILITY
COMPANY, APPELLEE, V. ACTIVE SPINE PHYSICAL THERAPY,
LLC, A NEBRASKA LIMITED LIABILITY COMPANY,
ET AL., APPELLANTS.

___ N.W.3d ___

Filed November 22, 2024.    No. S-24-032.

1. **Trial: Evidence: Rules of Evidence: Appeal and Error.** Evidential use of summaries rests within the sound discretion of the trial judge, whose action in allowing their use may not be disturbed by an appellate court except for an abuse of discretion.
2. **Verdicts: Juries: Appeal and Error.** A jury verdict will not be disturbed unless it is clearly wrong, and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party.
3. **Motions for New Trial: Appeal and Error.** A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.
4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
5. **Judgments: Verdicts.** To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.
6. **Judgments: Verdicts: Directed Verdict.** A motion for judgment notwithstanding the verdict may be granted when the movant's previous motion for directed verdict, made at the conclusion of all the evidence, should have been sustained.
7. **Judgments: Verdicts: Appeal and Error.** Review of a ruling on a motion for judgment notwithstanding the verdict is de novo on the record.

- 65 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

8. **Appeal and Error.** A trial court cannot commit error in resolving an issue never presented and submitted to it for disposition.

9. \_\_\_\_. An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal.

10. **Judgments: Verdicts: Directed Verdict.** Pursuant to Neb. Rev. Stat. § 25-1315.02 (Reissue 2016), an argument not previously asserted as grounds for a directed verdict is not preserved as grounds for judgment notwithstanding the verdict.

11. **Appeal and Error.** To be considered by an appellate court, the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief.

12. \_\_\_\_. An appellate court's holdings on issues presented to it conclusively settle all matters ruled upon, either expressly or by necessary implication.

13. **Waiver: Appeal and Error.** A decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision.

14. **Rules of Evidence.** Neb. Rev. Stat. § 27-1006 (Reissue 2016) permits the use of charts, summaries, or calculations of the contents of voluminous writings, recordings, or photographs that cannot conveniently be examined in court, so long as the requirements of the statute are met.

15. \_\_\_\_. Neb. Rev. Stat. § 27-1006 (Reissue 2016) is an exception to the requirement of Neb. Rev. Stat. § 27-1002 (Reissue 2016) that the originals must be presented to prove the contents of writings, recordings, and photographs.

16. **Rules of Evidence: Records.** Ledgers and similar records, relevant and admissible in their own right as business records and without regard to the admissibility of their underlying materials, do not fall under Neb. Rev. Stat. §§ 27-1002 and 27-1006 (Reissue 2016).

17. \_\_\_\_: \_\_\_\_. If produced reasonably contemporaneously with the transaction and in the normal course of business, records derived from more numerous detailed documents memorializing individual transactions are business records and not Neb. Rev. Stat. § 27-1006 (Reissue 2016) summaries thereof.

18. **Motions for New Trial: Verdicts: Appeal and Error.** A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict.

- 66 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

19. **Damages: Appeal and Error.** The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved.

20. **Motions for New Trial: Appeal and Error.** An appellant assigning as error on appeal the denial of a motion for new trial does not properly raise as grounds for trial court error any grounds that were never assigned or argued to the trial court with respect to the motion.

21. **Trial: Appeal and Error.** Statements made at high levels of generality do not sufficiently preserve an argument for decision.

22. **Judgments: Verdicts: Motions for New Trial: Juries.** A motion for judgment notwithstanding the verdict differs from a motion for new trial in that it requests that the court not only nullify the jury verdict, but also enter judgment in favor of the moving party.

23. **Judgments: Verdicts: Appeal and Error.** A trial court does not err by denying a motion for judgment notwithstanding the verdict on a ground not presented to it in the motion.

24. **Judgments: Verdicts: Directed Verdict: Appeal and Error.** Since a motion for judgment notwithstanding the verdict is simply a renewal of the motion for directed verdict made at the close of all the evidence, any arguments made in a motion for judgment notwithstanding the verdict that were not made in the motion for directed verdict are not preserved for appellate review of denial of the motion.

25. ____: ____: ____: ____. A precursor motion for directed verdict that fails to comply with the statutory requirements of specificity fails to provide a basis for rendition of judgment notwithstanding the verdict and preserves nothing for review.

26. **Appeal and Error.** Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, it fails to satisfy the requirement that for an alleged error to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.

27. **Contracts: Partial Performance.** The general rule with respect to what performance is required when a contract is made for the agreed exchange of two performances, one of which is to be rendered first, is not strict, literal, and exact compliance with the terms of the contract, but, rather, only substantial compliance or substantial performance.

28. **Breach of Contract: Pleadings: Notice: Waiver.** In a breach of contract action, the failure to plead with sufficient particularity to give the plaintiff fair notice of the affirmative defense of denial of performance of a condition precedent to a duty to perform under the contract waives any such defense.

- 67 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

29. **Trial: Appeal and Error.** One cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong.
30. **Verdicts: Juries: Presumptions.** Where a general verdict is returned for one of the parties, and the mental processes of the jury are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party.

Appeal from the District Court for Douglas County, Timothy P. Burns, Judge. Affirmed.

Zachary W. Lutz-Priefert, of Gross, Welch, Marks & Clare, P.C., L.L.O., for appellants.

Rubina S. Khaleel, Madaline McGill, and Allyse Noel, Senior Certified Law Student, of Hennessy & Roach, P.C., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. INTRODUCTION

Appellants, a tenant physical therapy business and its two owners, appeal from a jury verdict in a trial on remand following our opinion in *132 Ventures v. Active Spine Physical Therapy*.[1] The jury found appellants liable for breach of contract and personal guarantee to appellee, the lessor of the commercial building where appellants operated their physical therapy business, after appellants failed to pay rent and common area maintenance (CAM) charges. Appellants assign that the trial court erred in admitting the property management company's invoices, a ledger, and a reconciliation, because they include references to CAM services charged by third parties and the lessor failed to establish foundation for their admissibility as summaries of voluminous writings. Appellants also

---

[1] *132 Ventures v. Active Spine Physical Therapy*, 313 Neb. 45, 982 N.W.2d 778 (2022).

- 68 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

assign that the trial court erred by denying their motion for new trial or judgment notwithstanding the verdict (JNOV) for several reasons, only one of which was presented below in their motion for new trial: that the lessor failed to perform a condition precedent by not giving the physical therapy business prior notice of budgeted direct expenses before sending monthly invoices containing CAM charges. We affirm.

## II. BACKGROUND

The owner of the commercial property (Property), 132 Ventures, LLC (Ventures), sued Active Spine Physical Therapy, LLC (Active Spine), a physical therapy business, and its two owners, Sara Muchowicz and Nicholas Muchowicz. Ventures sought damages stemming from (1) Active Spine's failure to pay invoices under a lease signed in 2017 (2017 Lease) with the prior owner of the Property, DEMU Properties, LLC (DEMU); (2) breach of the Muchowiczes' personal guarantee of the 2017 Lease; and, alternatively, (3) unjust enrichment.

DEMU was a partnership between the Muchowiczes and Dale Scott, a real estate agent and investor. Under DEMU's operating agreement (Operating Agreement), Scott was originally DEMU's managing member. The Operating Agreement provided that a removed manager maintained voting rights as a member and that "the affirmative vote of all of the Members shall be necessary to effect . . . [a]ny contracts between the Company and any entity or individual affiliated with the Manager."

The purchase of the Property was made with a "bridge loan" with the intent to obtain long-term financing through a Small Business Administration (SBA) loan. The parties' understanding was that to qualify for the SBA loan, a holding company different from the lessee operating company had to buy the real estate. DEMU was formed for that purpose.

The 2017 Lease was drafted to comply with SBA requirements, providing for an occupancy of 9,544 square feet, representing 50.1 percent of the building, and for a 20-year term

- 69 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

with an option to terminate after 10 years. Following disagreements between Scott and the Muchowiczes, Scott was unwilling to sign a personal guarantee for the SBA loan. Thereafter, long-term financing could not be obtained.

After DEMU attempted to evict Active Spine, the Muchowiczes removed Scott as managing member. On February 28, 2020, an alleged amended lease (Amended Lease) was signed by Nicholas twice, once in his capacity as DEMU's manager and again on behalf of Active Spine. Scott neither had notice of nor participated in a vote to execute the Amended Lease. The Amended Lease reaffirmed most provisions of the 2017 Lease but changed the lease term to an immediate termination date of February 29, 2020, continuing month to month thereafter with the landlord having the right to terminate the month-to-month tenancy with 180 days' notice. The Amended Lease also eliminated a holdover provision.

Without long-term financing, the Property was eventually foreclosed upon. Scott formed Ventures, which purchased the Property in a foreclosure sale on June 10, 2020. After Active Spine failed to pay Ventures' invoices for payments due under the 2017 Lease, Ventures sent a notice to quit pursuant to Neb. Rev. Stat. § 25-21,221 (Reissue 2016).

### 1. Prior Proceedings

Ventures' action was originally brought in July 2020, when Active Spine was still occupying the Property. Ventures sought forcible entry and detainer in addition to the contractual and quasi-contractual claims.

The claim for forcible entry and detainer was bifurcated and tried without a jury. Active Spine and the Muchowiczes asserted that the 2017 Lease was procured as a result of fraudulent inducement by unilaterally changing the terms agreed to by the parties. They also argued they were occupying the Property under a COVID-19-related abatement. On January 4, 2021, the district court ordered restitution of the premises to Ventures and denied Active Spine's request for a temporary injunction

- 70 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

preventing Ventures from evicting it. The court found that Active Spine owed Ventures rent from bills not paid from July through October 2020, thereby implicitly rejecting the alleged abatement. The court questioned whether the validity of a lease is a defense to a forcible entry and detainer action when the defendants remain in possession of the premises, but reasoned that, even if it were, the evidence did not establish fraud in the execution of the 2017 Lease.

A separate bench trial was held in November 2021 on the causes of action for breach of contract, breach of personal guarantee, and unjust enrichment. Based on a failure to pay rent and CAM billed from June 2020 to February 2021, the court rendered a judgment against Active Spine and the Muchowiczes for breach of contract.

Active Spine and the Muchowiczes appealed to this court, challenging the lack of a jury trial. In our decision in *132 Ventures*, we affirmed that part of the judgment granting restitution of the premises but reversed the judgment on Ventures' breach of contract, breach of guarantee, and unjust enrichment claims.[2] We remanded the cause for a new trial before a jury on the contractual and quasi-contractual claims.

## 2. Trial on Remand

During the trial on remand, the jury heard the testimony of Sara, Nicholas, Scott, and employees of the property management company that worked for Ventures in managing the Property. The jury was presented with several exhibits, including the notice to vacate the premises pursuant to the court's prior order of restitution of the premises, the 2017 Lease, the Amended Lease, and the Operating Agreement, all of which were entered into evidence without objection.

Ventures' theory of the case for its breach of contract claims was that it assumed the 2017 Lease, including its personal guarantee, and that Active Spine breached the

---

[2] *Id.*

- 71 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

lease by not paying rent and other amounts due. Ventures argued the Amended Lease was ineffective because it violated the Operating Agreement. Ventures alternatively claimed compensation for unjust enrichment. Active Spine and the Muchowiczes, in contrast, told the jury the case was about "fairness" and "the power that a landlord has when [it] can withhold taking certain responsibilities, withhold following [its] obligations under the lease, and simultaneously demand payment without proving [entitlement] to it, without doing anything to earn it."

(a) DEMU's Operating Agreement

The Operating Agreement required notice of meetings to "every Member entitled to vote." Provision 5.2 designated Scott as the manager of the company until his incapacity, resignation, or removal. Provision 5.3 declared that "[t]he Manager shall have the sole authority to make decisions on the routine day-to-day management functions of the Company" and, further, that "[t]he Manager shall make recommendations to the Members regarding all material aspects of the management of the Real Estate of the Company including, but not limited to, decisions regarding . . . (ii) tenants, rental rates, and other lease terms prior to signing leases with new tenants for the Real Estate." This provision went on to describe a mediation process "[i]n the event that the Members are not in unanimous agreement with the Manager for any management decisions related to the items set forth in subsections (i) and (ii) in the previous sentence . . . ." Under provision 5.5, a removed manager maintained voting rights as a member. Provision 5.7 in the Operating Agreement set forth that "[n]otwithstanding the general provisions of Sections 4.7, 5.1, and 5.3, the affirmative vote of all of the Members shall be necessary to effect any of the following actions: . . . (e) [a]ny contracts between the Company and any entity or individual affiliated with the Manager."

- 72 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

(b) The 2017 Lease

Active Spine executed the 2017 Lease with DEMU on December 29, 2017, to occupy part of the Property DEMU had purchased. The 2017 Lease was signed by Scott as manager of DEMU and by Nicholas as manager of Active Spine.

Provision 3.1 of the 2017 Lease stated the 20-year term "shall commence ninety (90) days after the Premises is vacated by the existing tenant," which would then be the "Commencement Date." The estimation of the commencement date was in February 2019, but the actual date was to be confirmed later through a process set forth in the lease. An attached exhibit, a "Certificate of Occupancy," would then be completed. The "Certificate of Occupancy" was never filled out.

In addition to rent, Active Spine agreed, in provision 5.1, to pay "[d]irect [e]xpenses" based on the ratio of the total rentable square feet of the leased premises to the total rentable square feet of the building. Direct expenses were defined in provision 5.1.1 as "all direct and reasonable costs, expenses, and disbursements which Landlord shall incur, pay, or become obligated to pay in any calendar year in connection with the ownership, operation, maintenance, repair, replacement . . . , and security of the Building, the real estate . . . , and all related improvements and appurtenances thereto."

The 2017 Lease provided in provision 5.1 for "notice of the Budgeted Direct Expenses" to the tenant by the landlord of the estimated annual direct expenses on or before January 1 of each calendar year:

On or before January 1st of each calendar year subsequent to the calendar year in which this Lease commences, Landlord will notify Tenant of Landlord's estimate of the Direct Expenses ("Budgeted Direct Expenses") payable by Tenant for the calendar year. Following receipt of notice of the Budgeted Direct Expenses, Tenant shall pay to Landlord such amount in the same manner as the payment of Base Rent . . . one-twelfth (1/12) of the

- 73 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

amount of such Budgeted Direct Expenses for said calendar year.

Provision 5.2 described reconciling budgeted direct expenses with actual direct expenses, stating that "[n]ot later than ninety (90) days after January 1st of each year, Landlord will give written notice to Tenant of the Actual Direct Expenses for the preceding year." Active Spine would then receive a credit if the actual direct expenses were less than the budgeted direct expenses and would owe the difference if the budgeted direct expenses were less than the actual direct expenses.

Provision 16 set forth rules governing holdover, stating that the tenant had no right to occupy the premises after the expiration or termination of the lease and that, if the tenant does so, the tenancy will be from month to month. Under provisions 18.1 through 18.4, in the event of default, which included failure to pay rent or any other payment required under the lease 10 days after it is due, the 2017 Lease declared in provision 18.2 that the landlord could terminate the tenant's right to possession and recover from the tenant all damages incurred by reason of the tenant's default. These included, but were not limited to, "the cost of recovering possession of the Premises, expenses of reletting, including necessary renovation and alteration of the Premises (not to exceed $5 per [rentable square foot])." A separate provision, 28.18, established a "late charge" of 5 percent of any sum not paid within 10 days after written notice that it is past due.

Under "Attornment & Nondisturbance" in provision 28.12, the 2017 Lease stated that foreclosure on the Property shall not terminate the lease, the tenant shall recognize the purchaser at a foreclosure sale as the landlord, and the landlord shall cause each of its Lenders to execute a nondisturbance agreement acceptable to the tenant.

Sara and Nicholas executed an attached personal guarantee of payment of all rent and other charges and the performance of all covenants under the 2017 Lease.

### (c) Scott's Testimony

Scott testified he thought Active Spine began occupying the Property on May 1, 2019. However, because Nicholas did not think Active Spine had yet used its 90-day period for construction, Scott testified, "[W]e agreed we'd adjust it to June 1." Scott conceded the actual commencement date was never put on the 2017 Lease. According to Scott, Active Spine refused to sign the "Certificate of Occupancy" when it was later sent to Active Spine.

Scott explained how his partnership with the Muchowiczes deteriorated after Active Spine failed to pay rent to DEMU and caused multiple liens to be filed against the building for nonpayment of the construction loans. Scott was required to file a personal guarantee for an SBA loan, and he was no longer willing to do that. Scott obtained extensions on the bridge loan while attempting to find alternative financing but was ultimately unsuccessful in finding long-term financing for DEMU.

Scott testified that when he was still the managing member of DEMU, DEMU obtained an eviction order against Active Spine for not paying rent. He stated, "The very next day, they removed me as manager and canceled the eviction order against themselves." Scott did not participate in a vote to enter into the Amended Lease and first learned of the Amended Lease at that eviction hearing.

Scott explained that Active Spine was in its second year of the lease when Ventures bought the Property. On cross-examination, Scott was unsure if the property management company hired by Ventures had caused each of the lenders to execute a nondisturbance agreement acceptable to the tenant, as set forth in provision 28.12 of the 2017 Lease.

Scott testified that Active Spine was occupying the Property without paying anything for 7 months after Ventures became the landlord on June 10, 2020, for the period of June 10, 2020, to January 8, 2021. According to Scott, Active Spine

"never paid one penny in rent or direct expenses" and did not pay any late fees.

Scott testified he did everything in his power to re-lease the Property as quickly as possible after Active Spine was evicted. According to Scott, in addition to amounts due while occupying the Property, Active Spine owed Ventures approximately 8 months of rent and direct expenses for the period the Property was vacant while Ventures tried to lease it after Active Spine's eviction. Also, Active Spine owed 5 months of rent abatement Ventures had to give one of the new tenants as an incentive, a build-out allowance, real estate commission fees, and other costs related to re-leasing the Property. Scott testified that the value of the 5 months' rental abatement was $68,701.88 and that the improvements were worth $47,720. Ventures paid $14,889.57 in real estate commissions for one new lessee and $11,228.74 for another. Those amounts are also reflected in exhibits entered into evidence containing the invoices for the commissions. Exhibit 15, admitted into evidence without objection during Scott's testimony, is a "Lease Late Charge Provision" invoice showing a total amount due of $451,183.63 on October 21, 2021.

On cross-examination, Scott reiterated that rental abatement, low rent, and tenant improvements are all means of attracting possible tenants. Scott admitted that 100 percent of the time, a "rental rate" is used. Scott admitted that 75 percent of the time, some combination of rental abatement, lower rent, or tenant improvements is used for a new tenant. However, Scott did not necessarily agree with counsel's assertion that those items are "just the cost of doing business in your industry." Scott testified, "Well, it's part of doing business but not necessarily the cost of doing business. Otherwise, every tenant could leave after one year and you just keep incurring those costs, and that's not a very smart business." Scott agreed those costs of reletting are "bak[ed]" into the cost of building ownership but clarified that this was "[o]ver lease terms, . . . which is why the longer lease you sign, the more concessions you get."

- 76 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

#### (d) Management Company Testimony
#### and Exhibits 10, 11, and 16

Patricia White and Max Bogard, employees of the company that Ventures hired to handle the management of the Property, laid foundation for exhibits 10, 11, and 16 and testified concerning notices sent to, and invoicing of, Active Spine. White works as an assistant real estate controller overseeing accounting and testified that she was familiar with invoices that are sent to tenants. Bogard was the property manager for the Property. Exhibits 10, 11, and 16 contained information pertaining to billing under the 2017 Lease after Ventures purchased the Property. White and Bogard testified that all the documents contained in exhibits 10, 11, and 16 were prepared in the ordinary course of the management company's business in relation to Active Spine.

Exhibit 10 consisted of 63 pages of invoices that had been sent to Active Spine over a period of 15 months. The invoices included rent, CAM charges, and late fees. The CAM charges were based upon a monthly division of the budgeted direct expenses. The first invoice was sent on July 13, 2020, and reflected June 11 prorated rent and CAM. The remaining invoices were labeled "Lease Late Charge Provision" and began on August 18, reflecting charges beginning on July 1. The last invoice was on October 21, 2021. It reflected a total balance due of $451,183.63, which is the same amount reflected in exhibit 15. White testified that the monthly statements found in exhibit 10 were prepared by the management company's "accounts receivable specialist" in the ordinary course of business.

White testified that all the information regarding expenses, rent, CAM reconciliation, and late fees was sent through monthly statements to Active Spine and was also readily available for Active Spine to review. Bogard similarly testified that he had no reason to believe Active Spine did not receive the invoices. To his knowledge, they were received. Indeed, he said, there had been some correspondence "in

- 77 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

the beginning of this" where Nicholas questioned what the "'ACH payment'" was. Bogard added, "But then we've never received any payment."

Bogard also said there was no reason why Active Spine would have been unaware that it needed to pay Ventures' rent. The management company sent an email on June 11, 2020, to the Muchowiczes, as well as a certified overnight mailed document, explaining that it was the property manager hired by Ventures and would begin charging rent. Nicholas replied to the email, and there was confirmation that the letter was received.

Entered into evidence as exhibit 21 was a notice setting forth that it was sent via email and overnight delivery on June 12, 2020, from the management company to Nicholas. The letter notified Active Spine that effective June 10, Ventures owned the Property, and that it would be managed through the company. The notice set forth contact information for the Property staff and the address for Active Spine payment remittance and direct correspondence. Additionally, a letter from the management company to Nicholas, as manager of DEMU, was entered into evidence as exhibit 20. It shows that on June 11, the management company asked for documents to ensure a smooth transition in assuming management for Ventures.

Exhibit 11 consisted of 11 pages and contained a general ledger detailing the CAM costs for the commercial building from January through December 2020. It also contained a reconciliation of the CAM charges that Active Spine was responsible for paying from June 11 to December 31, 2020, based on its pro rata share. Exhibit 16 is identical to exhibit 11.

Both White and Bogard testified that the contents of exhibits 11 and 16 were prepared in the ordinary course of business. Bogard explained a ledger is where the management company keeps track of all the expenses paid out of the operating account for each tenant. Bogard testified the ledger was used by the management company for monthly financial reporting and CAM reconciliations.

- 78 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

White testified that the CAM reconciliations were sent to Active Spine by email with monthly statements and that she had no reason to believe they were not received. She stated the ledger was not sent to Active Spine but would have been provided if requested.

Bogard testified that during his time as the property manager, Active Spine never paid rent or any other charges under the invoices. Bogard testified without objection that the total owed as of October 2021 was $451,183.63. Bogart explained that the base rent amount was originally $10,339.33 per month, which increased to $10,737 per month in May 2021. The base rent for the 7-month period was $79,268.20, while the total CAM charges were $61,402.41. Late fees were incurred over the 7-month period in the amount of $33,305.73. However, those rental, CAM, and late fees continued to be incurred after January 2021 until Ventures was able to lease to a new tenant in October 2021. Other charges were incurred in acquiring a new tenant to lease the Property.

On cross-examination, Bogard testified that his recollection was that the lease between Active Spine and DEMU began in May 2019. Bogard clarified that he was not sure if it was April or May.

Bogard was questioned on cross-examination about an overassessment of CAM expenses one year in the amount of $10,385.57, which was credited back against what Active Spine owed. Active Spine's questioning suggested that the 5-percent late fee was incorrectly calculated and compounded upon an overassessment. On redirect, Bogard testified that the variance that resulted in the credit was due to the decrease in the estimated management fee because the management fee is a percentage of the base rent collected, which Active Spine failed to pay.

Active Spine and the Muchowiczes objected to exhibits 10, 11, and 16 under Neb. Rev. Stat. § 27-1006 (Reissue 2016) as compilations of other more voluminous documents that had not been made available. They did not object on any

- 79 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

other grounds. Active Spine and the Muchowiczes argued the exhibits were summaries of voluminous writings because they incorporated CAM charges that are "an amalgamation of things compiled together and divided over time" and contained "line items that have to be supported by some other underlying information." The court overruled the objections and admitted all three exhibits.

(e) Sara's and Nicholas' Testimony

Sara testified that her role at Active Spine was administrative, including accounts receivable and making payments on Active Spine's behalf. There was some overlap of duties with Nicholas, who worked as a physical therapist at Active Spine.

Both Sara and Nicholas testified that the 2017 Lease was entered into with the understanding that an SBA loan would be used to purchase the building at the end of the bridge loan period. Nicholas opined that the 2017 Lease was not valid because Scott did not enter into an SBA loan.

Sara stated that it was not until June 2019 that Active Spine commenced occupancy of the building. She pointed out that because a prior tenant had left behind "thousands of cables coming from the ceilings[,] . . . furniture," and other things, the building had not been in "broom-clean condition." Both Sara and Nicholas testified that they were not using the whole second floor of the building as indicated in the 2017 Lease. Sara explained that since Scott had canceled the SBA loan, it was no longer necessary that Active Spine occupy the entirety of the space. Thus, Ventures was charging Active Spine for space it was not using.

Both Sara and Nicholas testified that a couple of weeks before Active Spine moved into the Property, the parties to the 2017 lease had agreed to amend it to make it more compliant with the requirements of an SBA loan. An amended lease was drafted, and, according to Nicholas, in 2019 when Scott was still the manager, Sara, Nicholas, and Scott had a meeting and voted to amend the lease accordingly. Nicholas conceded, however, that the amendment the three of them

- 80 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

had agreed on was never signed and that later meetings about amending the lease, which resulted in the Amended Lease, did not include Scott. The terms of the Amended Lease were under the advice of Sara and Nicholas' attorneys and were no longer focused on the objective of SBA loan compliance. Sara and Nicholas opined that the failure to inform Scott or include Scott in the vote on the Amended Lease did not violate provision 5.7 of the Operating Agreement, because "effect" meant "to enter into" "[a]s opposed to affect[,] which would mean modify or change."

Both Sara and Nicholas testified that after Nicholas became the managing member, DEMU gave Active Spine and one of the other three tenants of the Property abatement on rent during the COVID-19 pandemic. That abatement was in place when Ventures purchased the building. No documentation of the COVID-19 abatement was provided. Sara and Nicholas both pointed out that Ventures never sent notice to Active Spine that it was ending the abatement period.

Nicholas testified that he did not believe he had a lease agreement with Ventures, which was why Active Spine never paid Ventures any rent. At the same time, Nicholas appeared to deny receiving invoices from Ventures. Sara testified that Ventures sent Active Spine an invoice via email after purchasing the Property and said, "I don't know why we were receiving an invoice from them. They should have been communicating with the person they bought it from, the bank, if they thought more money was owed to them." She testified it "felt like harassment." Sara also pointed out that no non-disturbance agreement was presented to Active Spine after Ventures' acquisition, as required by provision 28.1.2.

Sara and Nicholas testified neither DEMU nor Ventures ever provided Active Spine with budgeted direct expenses. In any event, Sara did not think the charges were "anything [the parties] ever agreed on," illustrating, "'Like, no place's utilities cost more than your mortgage.'"

Both Sara and Nicholas admitted Active Spine never paid rent to Ventures.

- 81 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

(f) Jury Instructions

The jury instructions given at the close of all the evidence included a statement of the case. The instructions set forth that Active Spine had signed the 2017 Lease and that it was "purportedly amended":

> This case involves a breach of contract on a commercial lease, a breach of contract on a personal guarantee and unjust enrichment. [Ventures] purchased commercial real estate located at 13220 Birch Drive in Omaha, Nebraska (the real estate) on June 10, 2020 from a foreclosure sale. Nicholas . . . owns [Active Spine]. Active Spine had signed a lease with the previous company that owned the property. Nicholas and Sara . . . signed a personal guarantee for this lease. The lease was purportedly amended by Nicholas . . . as the owner of Active Spine and as a manager of the previous owner.
>
> After [Ventures] purchased the real estate, Active Spine remained a tenant in the real estate until it was evicted. [Ventures] filed this lawsuit against Defendants Active Spine and Nicholas and Sara . . . alleging that the Defendants are liable for damages.

The jury was instructed on the breach of contract claim that Ventures claimed that Active Spine "breached the terms of a contract (lease) by not paying rent and other charges due pursuant to the contract (lease) between June 11, 2020 and November 1, 2021. [Active Spine] denies these allegations." The jury was further instructed that it was Ventures' burden to prove the terms of "the contract (lease)," that Active Spine breached the contract, that the breach was a proximate cause of some damage, and the nature and extent of that damage. The jury was instructed on the definition of proximate cause. It was instructed that "[a] landlord is entitled to recover unpaid rent, expenses and late charges."

The jury was instructed that if it found Ventures had met its burden of proof for the breach of contract claim, it must consider Active Spine's affirmative defenses that the claim is

- 82 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

barred by the doctrines of estoppel, waiver, and unclean hands and must render a verdict in favor of Active Spine if it so finds. Definitions for those affirmative defenses were given.

A similar instruction was given with respect to the alleged breach of the personal guarantee on the lease. The jury was also instructed on unjust enrichment, which was to be reached only if it found that Ventures had not met its burden on the breach of contract claim.

The jury was generally instructed it was the judge's duty to tell it what the law is and the jury's duty to decide the facts and apply the law to those facts.

At the jury instruction conference, Active Spine and the Muchowiczes did not object to any of the instructions. They offered a jury instruction defining a personal guarantee, which the court did not give because it believed the instruction on breach of guarantee was adequate. Active Spine and the Muchowiczes did not offer any other instructions.

### (g) Jury Verdict

The jury rendered a verdict in favor of Ventures in the amount of $593,723.82 under two out of the three verdict forms submitted to it. The record does not reflect that the parties requested verdict forms other than those submitted.

In the first verdict form, the jury found that Ventures had met its burden of proof on its claim that Active Spine "breached the terms of a contract (lease) by not paying rent and other charges due pursuant to the contract (lease) between June 11, 2020 and November 1, 2021."

In the second verdict form, the jury found that Ventures had met its burden of proof on the claim that the Muchowiczes executed a personal guarantee guaranteeing the payment of all rent and other charges due under the lease with Active Spine and breached the terms of the personal guarantee by not paying rent and other charges due pursuant to the lease between June 11, 2020, and November 1, 2021.

Because it found that Ventures had met its burden as to the breach of contract and breach of guarantee, the jury did not

- 83 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

reach the issue of unjust enrichment presented in a third verdict form.

Judgment was rendered on the verdicts for Ventures in the total sum of $593,723.82.

### (h) Motion for New Trial or JNOV

Active Spine and the Muchowiczes timely moved for a new trial or JNOV. They had previously moved for a directed verdict at the close of Ventures' case and again at the close of all the evidence, but they did not give any specific reasons for the motions.

In their motion for new trial or JNOV, Active Spine and the Muchowiczes alleged that the "jury erred in its analysis of the proofs." They elaborated that it did so in three respects.

First, they argued that "[n]o evidence of any kind was produced establishing that the personal guarantees which [Ventures] was attempting to enforce had been assigned to [Ventures]."

Second, they alleged that because the exhibit presented to the jury erroneously showed a damages commencement date of May instead of June 2020, the underlying principal and resulting late fee percentages were incorrect, resulting in a damages calculation that was "inherently wrong" due to "the effect of the compounding of interest."

Third, Active Spine and the Muchowiczes asserted that the jury erred in awarding damages that included CAM expenses. They argue the jury disregarded the word "shall" in the lease respecting the landlord's duty to notify Active Spine of the budgeted direct expenses before Active Spine had a duty to pay those expenses.

In the discussion of the motions before the trial court, Active Spine and the Muchowiczes explained that the most fundamental error was the jury's miscalculation of damages based on a demonstrative exhibit that started the CAM calculations a month too early. They also reiterated the alleged failure of Ventures, after the first year, to provide Active

- 84 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

Spine with the notice of the budgeted direct expenses. They argued this excused Active Spine from paying those expenses. Active Spine and the Muchowiczes summarized that the jury's calculations started "with a wrong premise" and "a month too early."

The district court overruled the motion. It explained that there was sufficient evidence for the jury to rule in Ventures' favor and that the jury's award of $593,723.82 was not clearly wrong. Active Spine and the Muchowiczes appeal.

### III. ASSIGNMENTS OF ERROR

Active Spine and the Muchowiczes assign on appeal that the district court erred by (1) overruling their motion for JNOV, (2) overruling their motion for new trial, (3) granting initial eviction proceedings without a jury and based upon the evidence before it, and (4) admitting exhibits 10, 11, and 16.

### IV. STANDARD OF REVIEW

[1] The evidential use of summaries rests within the sound discretion of the trial judge, whose action in allowing their use may not be disturbed by an appellate court except for an abuse of discretion.[3]

[2] A jury verdict will not be disturbed unless it is clearly wrong,[4] and it is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party.[5]

[3] A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.[6]

---

[3] *Crowder v. Aurora Co-op Elev. Co.*, 223 Neb. 704, 393 N.W.2d 250 (1986).

[4] *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

[5] *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022).

[6] *Bradley T. & Donna T. v. Central Catholic High Sch.*, 264 Neb. 951, 653 N.W.2d 813 (2002).

[4] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[7]

[5] To sustain a motion for JNOV, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.[8]

[6] A motion for JNOV may be granted when the movant's previous motion for directed verdict, made at the conclusion of all the evidence, should have been sustained.[9]

[7] Review of a ruling on a motion for JNOV is de novo on the record.[10]

[8] A trial court cannot commit error in resolving an issue never presented and submitted to it for disposition.[11]

[9] An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal.[12]

[10] Pursuant to Neb. Rev. Stat. § 25-1315.02 (Reissue 2016), an argument not previously asserted as grounds for a directed verdict is not preserved as grounds for JNOV.[13]

[11] To be considered by an appellate court, the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief.[14]

---

[7] *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

[8] *LeRette v. Howard*, 300 Neb. 128, 912 N.W.2d 706 (2018).

[9] *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 298 Neb. 777, 906 N.W.2d 1 (2018).

[10] *In re Estate of Koetter, supra* note 5.

[11] *Brown v. Jacobsen Land & Cattle Co.*, 297 Neb. 541, 900 N.W.2d 765 (2017).

[12] *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013).

[13] See *Parks v. Merrill, Lynch*, 268 Neb. 499, 684 N.W.2d 543 (2004).

[14] *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023).

- 86 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

## V. ANALYSIS

### 1. Eviction Proceedings

Active Spine and the Muchowiczes' assignment of error pertaining to Ventures' cause of action for forcible entry and detainer is procedurally barred. Under Neb. Rev. Stat. §§ 25-21,219 through 25-21,235 (Reissue 2016 & Cum. Supp. 2022), forcible entry and detainer is appropriate when the tenant is holding over the lease term by failing to pay rent when it became due, and the district court found that the rent was due despite Active Spine's allegation of an ongoing COVID-19 abatement period. In our prior opinion, we affirmed the district court's order of restitution of the premises. As Active Spine and the Muchowiczes conceded at oral arguments, the district court's order was the law of the case.

[12,13] Under the law-of-the-case doctrine, an appellate court's holdings on issues presented to it conclusively settle all matters ruled upon, either expressly or by necessary implication.[15] Furthermore, a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision.[16] We expressly settled the question of Active Spine and the Muchowiczes' right to a jury trial in the forcible entry and detainer action. And Active Spine and the Muchowiczes could have, but did not, challenge in the prior appeal the court's factual findings leading to the order of eviction or its failure to consider the validity of the CAM charges.

### 2. Voluminous Record Exhibits
### Allegedly Erroneously Admitted

With respect to the trial on remand for breach of contract, breach of personal guarantee, and unjust enrichment, we find, first, that the district court did not abuse its discretion in

---

[15] *Pennfield Oil Co. v. Winstrom*, 276 Neb. 123, 752 N.W.2d 588 (2008).

[16] *Id*.

- 87 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

admitting exhibits 10, 11, and 16. We hold that the exhibits are not summaries as contemplated by § 27-1006 and were admissible as business records.

[14] Section 27-1006 permits the use of charts, summaries, or calculations of the contents of voluminous writings, recordings, or photographs that cannot conveniently be examined in court, so long as the requirements of the statute are met. Section 27-1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The judge may order that they be produced in court.

We have held that for the admission of an exhibit into evidence pursuant to § 27-1006, the proponent of the "chart, summary, or calculation" must (1) reasonably identify the existing and underlying documents summarized, including identification of the ultimate source of documentary information contained in the proposed summary; (2) show that the original documents or duplicates underlying the proposed summary and the data contained in those underlying documents are otherwise admissible evidence; (3) have served a copy of the proposed summary on the opposing party, sufficiently in advance of intended use of the summary, and have provided the opposing party with a reasonable time and place for examination of the available documents underlying such summary; and (4) establish that the documents underlying the summary are voluminous.[17] A factual foundation, demonstrating a fulfillment of each of the four factors set forth above, is a condition precedent to admissibility of a written summary under § 27-1006.[18]

---

[17] *Crowder v. Aurora Co-op. Elev. Co., supra* note 3.

[18] *Id.*

- 88 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

Section 27-1006 is Nebraska's counterpart to Fed. R. Evid. 1006 and is substantially similar to the federal rule.[19]

[15] Under Neb. Rev. Stat. § 27-1002 (Reissue 2016), also part of article 10 of the rules of evidence,

> [t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, *except as otherwise provided in these rules* or by Act of Congress or of the Legislature of the State of Nebraska or by other rules adopted by the Supreme Court of Nebraska.

(Emphasis supplied.) The permissive language of federal rule 1006 "makes it clear that Rule 1006 does no more than create an exception to Federal Rule of Evidence 1002, which requires an original to prove contents of writings, recordings, and photographs."[20] Section 27-1006 is an exception to the requirement of § 27-1002 that the originals must be presented to prove the contents of writings, recordings, and photographs.

Under Neb. Rev. Stat. § 27-803 (Cum. Supp. 2022) of the rules of evidence, we have held that routine recordkeeping, essential to the conduct of business, produces the reliability necessary for admissibility of business records.[21] Section 27-803 of the rules of evidence provides that business records are not excluded by the hearsay rule. Under Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2022), "[h]earsay is a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted." Under Neb. Rev. Stat. § 27-802 (Reissue 2016), "[h]earsay is not admissible except as provided by these rules, by other rules adopted by the statutes of the State of Nebraska, or by the discovery rules of the Supreme Court." Business records are defined as

---

[19] *Id.*

[20] 31 Charles Alan Wright & Victor J. Gold, Federal Practice and Procedure § 8043 at 522 (2021).

[21] *Crowder v. Aurora Co-op. Elev. Co., supra* note 3.

- 89 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

[a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, other than opinions or diagnoses, that was received or acquired in the regular course of business by an entity from another entity and has been incorporated into and kept in the regular course of business of the receiving or acquiring entity; that the receiving or acquiring entity typically relies upon the accuracy of the contents of the memorandum, report, record, or data compilation; and that the circumstances otherwise indicate the trustworthiness of the memorandum, report, record, or data compilation, as shown by the testimony of the custodian or other qualified witness. [22]

Active Spine and the Muchowiczes did not object based on hearsay, but the uncontradicted testimony of White and Bogard established that the exhibits, consisting of invoices prepared by an accounts receivable specialist in the regular course of business, a general ledger of the property management company pertaining to expenses for the Property prepared in the regular course of business, and a reconciliation prepared in the regular course of business, are business records. Indeed, Active Spine and the Muchowiczes appeared to concede this point at oral arguments.

Exhibits 10, 11, and 16 are, as defined by § 27-803(6)(b), data compilations of acts, events, or conditions received or acquired in the regular course of business "by an entity from another entity," incorporated into and kept in the regular course of business of the receiving or acquiring entity. There is no dispute that the CAM charges were received from the third-party providers in Ventures' normal course of business. Also, White and Bogard testified that the documents were created in the ordinary course of business and that the management company typically relied upon the accuracy of the

---

[22] § 27-803(6)(b).

- 90 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

contents of the invoices, ledger, and reconciliation in conducting its operations.

Active Spine and the Muchowiczes argue that, regardless of whether they qualify as business records, the exhibits are charts, summaries, or calculations of voluminous writings, recordings, or photographs—for essentially the same reason that they are business records. They argue the management company's records reflect the invoices of third parties who provided maintenance-related services for the Property and assert that these underlying third-party invoices are so numerous that they cannot conveniently be examined in court. As such, Active Spine and the Muchowiczes assert that while Ventures demonstrated the underlying documents were voluminous, the "summaries" are inadmissible because Ventures did not establish the admissibility of the underlying third-party invoices or make them available as required by § 27-1006.

Section 27-1006 does not state that any exhibit that might be characterized as a chart, summary, or calculation must satisfy the criteria for admissibility under § 27-1006 in order to be admissible. Rather, § 27-1006 gives the proponent an avenue to admit evidence over an objection under § 27-1002, which provides that the original is required to prove the content of a writing, recording, or photograph "except as otherwise provided in these rules or by Act of Congress or of the Legislature of the State of Nebraska or by other rules adopted by the Supreme Court of Nebraska." The exception to the requirement of providing the original is not limited to the exception set forth in § 27-1006.

[16,17] Active Spine and the Muchowiczes did not object under § 27-1002, and it is therefore questionable whether they preserved the alleged error. In any event, it is generally understood that ledgers and similar records, relevant and admissible in their own right as business records and without regard to the admissibility of their underlying materials, do

- 91 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

not fall under §§ 27-1002 and 27-1006[23] because they are not summaries as defined by § 27-1006,[24] but are considered the original writings. If produced reasonably contemporaneously with the transaction and in the normal course of business, records derived from more numerous detailed documents memorializing individual transactions are business records and not § 27-1006 summaries thereof.[25]

Thus, in *U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co.*,[26] a suit brought by the insured and the primary insurer against an excess insurer, the appellate court found the requirements for admissibility under federal rule 1006 were inapplicable to the computer-generated summaries of payments made on claims, which showed the indemnity and expenses paid on the claims, the names of each vendor paid on the claims, the total amounts paid to each vendor, vendor numbers, transaction dates, check numbers, and amounts of payments made. In other words, third-party documents were incorporated into the documents. The appellate court explained that the documents were business records because they were compiled in the ordinary course of business. The documents were "the writings at issue, not summaries of other evidence"; therefore, the underlying documents were not required for their admissibility.[27]

As explained in another case, *United States v. Draiman*,[28] entries on a business record are not secondary summaries and

---

[23] See Annot., 198 A.L.R. Fed. 427 (2004).

[24] See *Smith v. Alternative Resources Corp.*, 128 Fed. Appx. 614 (9th Cir. 2005).

[25] See, e.g., *U.S. v. Catabran*, 836 F.2d 453 (9th Cir. 1988); *United States v. Sanders*, 749 F.2d 195 (5th Cir. 1984); *In re Gulph Woods Corp.*, 82 B.R. 373 (E.D. Pa. 1988).

[26] *U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040 (9th Cir. 2009). See, also, e.g., *United States v. Sanders, supra* note 25.

[27] *U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co., supra* note 26, 576 F.3d at 1046.

[28] *United States v. Draiman*, 784 F.2d 248 (7th Cir. 1986).

- 92 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

are admissible as original entries, regardless of availability of the underlying documents:

> [Federal rule] 1006 contemplates the admission of a summary, prepared for trial, as *secondary* evidence of "voluminous writings, recordings or photographs" that could not conveniently be introduced at trial. . . . The entries on a business record, however, are considered the original entries, and therefore the business record is admissible without regard to the availability of the underlying documents.[29]

*Draiman* also highlights the understanding by some courts that federal rule 1006 is "inapplicable to evidence that is in the form of a summary or chart but was prepared in connection with the events in question rather than for use at trial."[30]

Few cases in Nebraska have discussed § 27-1006, but our case law is consistent with these principles. In *Groenewold v. Building Movers, Inc.*,[31] we held that a list compiled by the owner of a house-moving business enumerating the names of persons for whom he had performed services, the amounts the customers had paid him, and the dates the services were performed was not a summary of voluminous documents. We said the list contained the ultimate facts and sufficient foundation was laid for its admission. In *Crowder v. Aurora Co-op. Elev. Co.*,[32] on the other hand, we held that written summaries of thousands of sale tickets and 61 contracts during the disputed period were inadmissible. We observed that the "real or substantial evidence" was presented to the jury through the summaries, which contained hearsay that did not qualify as an

---

[29] *Id.* at 256 n.6, quoting 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 1006[01]-[02] (1983).

[30] 31 Wright & Gold, *supra* note 20, § 8043 at 527. See, also, *Atlantic Specialty Ins. v. Coastal Environmental*, 945 F.3d 53 (2d Cir. 2019).

[31] *Groenewold v. Building Movers, Inc.*, 197 Neb. 187, 247 N.W.2d 629 (1976).

[32] *Crowder v. Aurora Co-op. Elev. Co., supra* note 3.

- 93 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
318 NEBRASKA REPORTS
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

exception to the hearsay rule.[33] There was no indication that the summaries were prepared in the regular course of business and would have qualified as business records.

Active Spine and the Muchowiczes argue that the exhibits in question are distinguishable from those in *Groenewold* and similar to those in *Crowder*. They assert the exhibits were not admissible unless they satisfied § 27-1006 because the information that the invoices, ledger, and reconciliation incorporate are from third parties, rather than from other internal sources. We find no merit to this argument. As already noted, § 27-803(6)(b) specifically refers to a memorandum, report, record, or data compilation "received or acquired in the regular course of business . . . *from another entity*."

Ventures submitted the exhibits in question as the real and substantial evidence relevant to showing that the charges reflected therein were owed. As business records, they have the necessary reliability for admissibility as original documents as opposed to secondary summaries. The district court did not err in overruling Active Spine and the Muchowiczes' objection under § 27-1006 and admitting exhibits 10, 11, and 16.

### 3. MOTIONS FOR NEW TRIAL OR JNOV

Lastly, we hold that the district court did not err in overruling Active Spine and the Muchowiczes' motion for new trial or JNOV. Active Spine and the Muchowiczes admit that exhibits and testimony admitted into evidence at trial support the amount of damages awarded but assert on appeal that the jury's verdict was excessive because (1) no reasonable jury could have found that Ventures' costs associated with incentivizing a new tenant to lease the premises were tied to the breach of Active Spine; (2) the uncontradicted evidence was that Active Spine was in ongoing COVID-19-related rent abatement; (3) there was no evidence that Ventures gave Active Spine notice of the budgeted direct expenses as described

---

[33] *Id*. at 716, 393 N.W.2d at 259.

- 94 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

under the 2017 Lease, an alleged condition precedent to the obligations to pay the CAM charges billed; and (4) "[t]he clear and uncontradicted evidence is that the lease amendment had occurred,"[34] from which they argue it follows that the lease ended January 2021, 6 months after Ventures' forcible entry and detainer action.

Only one of these arguments was presented to the trial court in relation to Active Spine and the Muchowiczes' motion for new trial or JNOV: that notice of budgeted direct expenses was a condition precedent to Active Spine's obligations to pay direct expenses billed to it. No specific arguments were made with respect to the motion for a directed verdict that was the precursor to the motion for new trial or JNOV.

Neb. Rev. Stat. § 25-1142 (Reissue 2016) sets forth the possible reasons for granting a new trial and defines a new trial as "a reexamination in the same court of an issue of fact":

> A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court. The former verdict, report, or decision shall be vacated and a new trial granted on the application of the party aggrieved for any of the following causes affecting materially the substantial rights of such party: . . . (4) excessive damages, appearing to have been given under the influence of passion or prejudice; (5) error in the assessment of the amount of recovery, whether too large or too small, if the action is upon a contract or for the injury or detention of property; (6) that the verdict, report, or decision is not sustained by sufficient evidence or is contrary to law; . . . and (8) error of law occurring at the trial and excepted to by the party making the application.

[18,19] A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has

---

[34] Brief for appellants at 23.

- 95 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

occurred.[35] Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict.[36] The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved.[37] Thus, a motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.[38] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[39]

Neb. Rev. Stat. § 25-1144 (Reissue 2016) states that the application for a new trial shall be by a motion upon written grounds:

> The application for a new trial shall be by motion, upon written grounds, filed at the time of making the motion. It shall be sufficient, however, in assigning the grounds of the motion to assign the same in the language of the statute and without further or other particularity. The causes enumerated in subdivisions (2), (3), and (7) of section 25-1142 shall be sustained by affidavits showing their truth and may be controverted by affidavits.

Neb. Rev. Stat. § 25-1912.01 (Reissue 2016), enacted in 1982,[40] provides for when a motion for new trial is or is not a "prerequisite to obtaining appellate review":

---

[35] *Bradley T. & Donna T. v. Central Catholic High Sch., supra* note 6.

[36] See *Commerce Sav. Scottsbluff v. F.H. Schafer Elev., supra* note 4.

[37] *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 713 N.W.2d 471 (2006).

[38] *Bradley T. & Donna T. v. Central Catholic High Sch., supra* note 6.

[39] *State v. Archie, supra* note 7.

[40] 1982 Neb. Laws, L.B. 720, § 1.

- 96 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

(1) A motion for a new trial shall not be a prerequisite to obtaining appellate review of any issue upon which the ruling of the trial court appears in the record.

(2) When an action has been tried before a jury a motion for a new trial shall not be a prerequisite to obtaining appellate review of the sufficiency of the evidence, but a motion for a new trial shall be a prerequisite to obtaining appellate review of the issue of inadequate or excessive damages.

Before the enactment of § 25-1912.01, we held that when a party did not file a motion for new trial below, the appellate court could only review the record to determine whether the judgment is supported by the pleadings.[41] By enacting § 25-1912.01, the Legislature "dispensed with the necessity of a motion for new trial as a prerequisite to appellate review in certain situations."[42] Since then, we have held that the failure to file a motion for new trial does not limit our review of a ruling of the trial court that appears in the record.[43] This includes, for example, the court's rulings on the admission or exclusion of evidence and on the amendment of pleadings,[44] whereas before these were matters that required a motion for new trial to preserve them for review on appeal.[45] And, as stated in the statute, no motion for new trial need be made as a prerequisite for appellate review of the sufficiency of the evidence. In contrast, a motion for new trial must be made to preserve appellate review of allegedly inadequate or excessive damages unsupported by the evidence.[46]

---

[41] See *Sempek v. Sempek*, 198 Neb. 300, 252 N.W.2d 284 (1977), and *Nebraska State Bank v. Dudley*, 203 Neb. 226, 278 N.W.2d 334 (1979).

[42] *Dunn v. Hemberger*, 230 Neb. 171, 175-76, 430 N.W.2d 516, 519 (1988).

[43] *Professional Recruiters v. Oliver*, 235 Neb. 508, 456 N.W.2d 103 (1990).

[44] See, *State v. Blair*, 227 Neb. 742, 419 N.W.2d 868 (1988); *Caro, Inc. v. Roby*, 215 Neb. 897, 342 N.W.2d 182 (1983).

[45] See *Petersen v. Petersen*, 208 Neb. 1, 301 N.W.2d 592 (1981).

[46] *First Nat. Bank North Platte v. Cardenas*, 299 Neb. 497, 909 N.W.2d 79 (2018).

- 97 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

[20,21] We do not read § 25-1912.01 as modifying our longstanding case law holding that an appellant assigning as error on appeal the denial of a motion for new trial does not properly raise as grounds for trial court error any grounds that were never assigned or argued to the trial court with respect to the motion.[47] A trial court cannot commit error in resolving an issue never presented and submitted to it for disposition,[48] and an issue not presented to or passed on by the trial court is not appropriate for consideration on appeal.[49] Statements made at high levels of generality do not sufficiently preserve an argument for decision.[50] A trial court cannot err in failing to grant a motion for new trial for a reason not raised in the motion.[51]

[22] A motion for JNOV differs from a motion for new trial in that it requests that the court not only nullify the jury verdict, but also enter judgment in favor of the moving party.[52] A motion for JNOV is referred to in § 25-1315.02, which states that a party may move for JNOV in accordance with the moving party's motion for a directed verdict:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. No later than ten days after the entry of judgment, a party who has moved

---

[47] See, e.g., *Peters v. Peters*, 194 Neb. 558, 233 N.W.2d 924 (1975); *Bulger v. Prenica*, 93 Neb. 697, 142 N.W. 117 (1913); *Sullivan v. State*, 58 Neb. 796, 79 N.W. 721 (1899).

[48] *Brown v. Jacobsen Land & Cattle Co., supra* note 11.

[49] *Sherman T. v. Karyn N., supra* note 12.

[50] *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180 (5th Cir. 2018).

[51] See *Bridwell v. Walton*, 27 Neb. App. 1, 925 N.W.2d 94 (2019). See, also, *Parks v. Merrill, Lynch, supra* note 13; *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993).

[52] 25A Phillip Barber, *Post-Trial Procedure and Appeal*, Rocky Mtn. Min. L. Spec. Inst. ch. 12 (1989).

for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the moving party's motion for a directed verdict. . . . A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.

Neb. Rev. Stat. § 25-1315.01 (Reissue 2016) provides, in relevant part, that "[a] motion for a directed verdict shall state the specific grounds therefor." A motion for JNOV may be granted when the movant's previous motion for directed verdict, made at the conclusion of all the evidence, should have been sustained.[53]

[23-25] Like with a motion for new trial, a trial court does not err by denying a motion for JNOV on a ground not presented to it in the motion.[54] Perhaps more fundamentally, we have held that pursuant to §§ 25-1315.01 and 25-1315.02, an argument not previously asserted as grounds for a directed verdict is not preserved as grounds for JNOV.[55] Since a motion for JNOV is simply a renewal of the motion for directed verdict made at the close of all the evidence, any arguments made in a motion for JNOV that were not made in the motion for directed verdict are not preserved for appellate review of denial of the motion.[56] A precursor motion for directed verdict that fails to comply with the statutory requirements of

---

[53] *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist., supra* note 9.

[54] See, *Energy Transp. Group v. William Demant Holding A/S*, 697 F.3d 1342 (Fed. Cir. 2012); *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307 (6th Cir. 2007); *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83 (2nd Cir. 1998), *modified, Baron v. Port Authority of New York and New Jersey*, 271 F.3d 81 (2d Cir. 2001); *Waddell v. Grant/Riverside Medical Care*, 2017 Ohio 1349, 88 N.E.3d 664 (Ohio App. 2017); *Lee v. West Kern Water Dist.*, 5 Cal. App. 5th 606, 210 Cal. Rptr. 3d 362 (2016); *Alonso v. State*, 838 So. 2d 309 (Miss. App. 2002); *Peavy v. Goodroe*, 237 Ga. App. 36, 514 S.E.2d 699 (1999).

[55] See, e.g., *Parks v. Merrill, Lynch, supra* note 13; *Mitchell v. Cedar Rapids Community School*, 832 N.W.2d 689 (Iowa 2013).

[56] See, e.g., *Carr v. Nance*, 370 S.W.3d 826 (Ark. 2010).

- 99 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

specificity fails to provide a basis for rendition of JNOV and preserves nothing for review.[57]

### (a) COVID-19 Abatement, Costs of New Tenancy, and Amended Lease

Active Spine and the Muchowiczes failed to preserve for appeal their arguments that the court should have granted a new trial or JNOV because (1) no reasonable jury could have found that Ventures' costs associated with incentivizing a new tenant to lease the premises were a result of the breach, (2) Active Spine was occupying the Property under an ongoing COVID-19-related rent abatement, and (3) the Amended Lease was effective and terminated the tenancy earlier than reflected in the damages award. Their motion for directed verdict was made at a high level of generality that failed to preserve any "legal questions" as described in § 25-1315.02. Moreover, Active Spine and the Muchowiczes could have, but did not, raise in their alternative motion for new trial or JNOV the question of liability for costs related to securing the new tenancy, the alleged COVID-19 abatement, and the termination of the tenancy under the terms of the Amended Lease. Because they did not raise these challenges in any motion for new trial, directed verdict, or JNOV, the challenges are procedurally barred. The argument pertaining to COVID-19 abatement is procedurally barred for the additional reason that it was considered and implicitly rejected by the district court in the forcible entry and detainer proceedings and is the law of the case.

### (b) Budgeted Direct Expenses

Because Ventures' failure to send Active Spine an annual notice of budgeted direct expenses was assigned below in the motion for new trial, we address whether the district court

---

[57] See, e.g., *Allied Building Credits, Inc. v. Damicus*, 167 Neb. 390, 93 N.W.2d 210 (1958); *Piers v. Dept. of Corrections*, 688 S.W.3d 65 (Mo. App. 2024).

- 100 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

abused its discretion by failing to grant a new trial on the grounds that no notice of the annual budgeted direct expenses was sent to Active Spine for the 2021 calendar year and that such notice was a condition precedent to Active Spine's duty to pay the CAM charges reflected in the invoices. Because this was not raised in the motion for directed verdict, however, we find that the district court could not have erred in failing to grant JNOV on this basis.

[26] Active Spine and the Muchowiczes acknowledge they received notification of the budgeted direct expenses through the invoices setting forth their monthly share of those expenses, but assert that Ventures' providing them with a prior annual estimate of the budgeted direct expenses was a condition precedent to Active Spine's obligation to pay CAM charges. Active Spine and the Muchowiczes do not provide legal support for their conclusion that prior notice of the total annual budgeted direct expenses was a condition precedent to its obligations to pay the CAM charges, and it is questionable whether their assignment of error was specifically argued. Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, it fails to satisfy the requirement that for an alleged error to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.[58] In any event, for several reasons, the district court did not abuse its discretion by failing to grant a new trial because no notice of the annual budgeted direct expenses was sent to Active Spine for the 2021 calendar year.

[27] A condition precedent includes a condition which must be fulfilled before a duty arises to perform an existing contract.[59] However, the general rule with respect to what performance is required when a contract is made for the agreed

---

[58] See *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

[59] See *Dick v. Koski Prof. Group*, 307 Neb. 599, 950 N.W.2d 321 (2020), *modified on denial of rehearing* 308 Neb. 257, 953 N.W.2d 257 (2021).

- 101 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

exchange of two performances, one of which is to be rendered first, is not strict, literal, and exact compliance with the terms of the contract, but, rather, only substantial compliance or substantial performance.[60] Thus, when the parties have entered into a bilateral contract calling for an exchange of performances, and one of the parties must perform first, that party's substantial performance is a constructive condition precedent to the other's duty to render the return performance promised.[61] Material breach and substantial performance are generally questions of fact.[62]

We agree that there was no evidence at trial that Ventures sent Active Spine an annual notice of budgeted direct expenses on or before January 1. It would be speculation that this was sent by DEMU before Ventures' purchase in June 2020.

[28] This lack of evidence may be because Active Spine and the Muchowiczes did not plead as an affirmative defense the failure to perform the alleged condition precedent of sending a notice of budgeted direct expenses; thus, Ventures did not have notice that it had to defend against this claim. In a breach of contract action, the failure to plead with sufficient particularity to give the plaintiff fair notice of the affirmative defense of denial of performance of a condition precedent to a duty to perform under the contract waives any such defense.[63]

---

[60] 15 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 44:52 (4th ed. 2014). See, also, e.g., *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018); *RM Campbell Indus. v. Midwest Renewable Energy*, 294 Neb. 326, 886 N.W.2d 240 (2016).

[61] *Id.*

[62] *Siouxland Ethanol v. Sebade Bros.*, 290 Neb. 230, 859 N.W.2d 586 (2015).

[63] See, *Haffke v. Signal 88*, 306 Neb. 625, 947 N.W.2d 103 (2020); *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017); *In re Estate of Hockemeier*, 280 Neb. 420, 786 N.W.2d 680 (2010); *Preston v. Omaha Cold Storage Terminals*, 16 Neb. App. 228, 742 N.W.2d 782 (2007); *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003), *disapproved on other grounds, Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017).

- 102 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

Neb. Ct. R. Pldg. § 6-1109(c) (rev. 2008) requires, under "Conditions Precedent": "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." Further, Neb. Ct. R. Pldg. § 6-1108(c) provides: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." Under § 6-1108(c), if a defendant wants to contest any of the conditions of the contract under which the plaintiff has brought an action for breach, "[t]he defendant must specifically allege in its answer which condition(s) it claims did not occur."[64] And failure to perform a condition precedent of the contract under which the plaintiff brings the claim for breach is an affirmative defense.[65]

We are aware that an issue not raised by the pleadings may be tried by the parties' express or implied consent—if the parties recognized that an issue not presented by the pleadings entered the case at trial.[66] Ventures did not object to Active Spine and the Muchowiczes' attorney's questioning regarding whether a notice of budgeted direct expenses had been sent. It is not clear, however, that this qualified as implied consent to try the question. Active Spine and the Muchowiczes' attorney appeared to briefly raise, through comments or questioning of the witnesses, numerous theories as to why Active Spine and the Muchowiczes should not be found liable, some of which involved questions of law, rather than questions of fact, and none of which were objected to.

---

[64] John P. Lenich, Nebraska Civil Procedure § 9:17 at 485 (2024). See, also, *Preston v. Omaha Cold Storage Terminals, supra* note 63.

[65] See *Weber v. North Loup River Pub. Power*, 288 Neb. 959, 854 N.W.2d 263 (2014).

[66] See *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006).

- 103 -

Nebraska Supreme Court Advance Sheets
318 Nebraska Reports
132 VENTURES v. ACTIVE SPINE PHYSICAL THERAPY
Cite as 318 Neb. 64

Ultimately, no jury instructions were requested by Active Spine and the Muchowiczes on those theories. Most relevant, no jury instructions were requested on the defense of failure to substantially perform a condition precedent. Neither did Active Spine and the Muchowiczes request that the issue of failure to perform a condition precedent be submitted to the jury in a special verdict form.

[29,30] Other courts have held that the failure to proffer an instruction on an affirmative defense waives any error in the verdict with respect to the issue.[67] We have said one cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong.[68] Furthermore, where a general verdict is returned for one of the parties, and the mental processes of the jury are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party.[69]

The jury was presented at trial with evidence of the failure to send the annual budgeted direct expenses. It was also presented with the evidence that these budgeted direct expenses were represented in a monthly division in the invoices that Ventures sent to Active Spine. It was instructed on breach of contract. It implicitly found the lack of a prior notice of the annual estimate of the direct expenses immaterial to whether Active Spine breached the contract by failing to pay the CAM charges. To the extent this was due to a failure to instruct the jury on the affirmative defense of failure to substantially perform a condition precedent, it is waived. The district court

---

[67] See, *J.B. Hunt Transp., Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995); *Superior Broadcast v. Doud Media Group*, 392 S.W.3d 198 (Tex. App. 2012); *Missouri Dept. of Transp. ex rel. v. SAFECO*, 97 S.W.3d 21 (Mo. App. 2002), *overruled on other grounds, Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013).

[68] *de Vries v. L & L Custom Builders*, 310 Neb. 543, 968 N.W.2d 64 (2021).

[69] See *id.*

did not abuse its discretion in denying Active Spine and the Muchowiczes' motion for new trial.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

Miller-Lerman, J., not participating.